No. 74–481.  VIRGINIA *v.* UNITED STATES ET AL.  Affirmed on appeal from D. C. D. C.

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and MR. JUSTICE POWELL join, dissenting.

I dissent from the Court's summary affirmance of judgment of the District Court for the District of Columbia, which denied Virginia's request to be exempted from coverage of the Voting Rights Act of 1965.  Although the court agreed that Virginia had made a prima facie case for entitlement to relief, it nevertheless concluded that the continued use until 1965 of a minimal literacy requirement had the effect of discriminating on the basis

---

*MR. JUSTICE DOUGLAS took no part in the consideration or decision of cases in which orders hereinafter reported were announced on this date.

of race. The question of whether Virginia should remain subject to the extensive consequences of continuing federal oversight under the Act, in a case where the conceded prima facie showing suggests the absence of any demonstrable need for such oversight, warrants plenary consideration by this Court. This is especially true in view of the dubious relevance of the grounds relied upon by the District Court to overcome Virginia's prima facie showing.* The fact that under the language of the present Act Virginia may well escape from federal tutelage sometime this year makes the case of less importance to her than it otherwise might be. But while this would be a sound reason for denying certiorari, it does not justify the Court's summary affirmance of the judgment of the District Court.

---

*The only "literacy test" employed in Virginia was a requirement that a person wishing to register to vote "make application to register in his own handwriting, without aid, suggestion, or memorandum," using for this purpose a standard, relatively simple form. No literacy test of any kind has been required since 1965. The District Court believed that it could infer that the Virginia requirement had a discriminatory effect in 1963–1965 because the registration rate of Negro citizens was 10% lower than the rate among whites. But there was a differential of 11.5% in the Nation as a whole in 1966, the year following passage of the Act. U. S. Bureau of the Census, Current Population Reports, Series P–20, No. 208 (1970).

The residual impact of segregated schools, also relied upon by the Court of Appeals, is a condition not peculiar to Virginia or even to the limited number of States covered by the Act. If the consequences of segregated education were the justification for the Act, it would have embraced all of the substantial number of States in various sections of the country which have segregated schools. See, e. g., *Milliken* v. *Bradley,* 418 U. S. 717 (1974); *Keyes* v. *School District No. 1, Denver, Colorado,* 413 U. S. 189 (1973).