**CITIZENS COMMITTEE TO OPPOSE ANNEXATION, Plaintiff,**

v.

**CITY OF LYNCHBURG, VIRGINIA, et al., Defendants.**

Civ. A. No. 75–0009–L.

United States District Court,
W. D. Virginia,
Lynchburg Division.

Aug. 11, 1975.

4. *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L. Ed.2d 474 (1969).

J. Leyburn Mosby, Jr., Hugh J. M.
Jones, III, Lynchburg, Va., E. A. Prich-

ard, K. Stewart Evans, Jr., George F. Trowbridge, Jr., Boothe, Prichard & Dudley, Fairfax, Va., for plaintiff.

William Phillips, Lynchburg, Va., for the City of Lynchburg.

John S. Davenport, III, William R. Cogar, Mays, Valentine, Davenport & Moore, Richmond, Va., for the City of Lynchburg.

Royston Jester, III, Lynchburg, Va., for Members of the Electoral Board of City of Lynchburg.

E. Bruce Harvey, Rustburg, Va., for Members of Electoral Board of Campbell County.

OPINION and ORDER

TURK, Chief Judge.

■ The plaintiff Citizens Committee to Oppose Annexation (hereinafter CCOA) brought this action seeking to void and enjoin the enforcement of a state court decree ordering the annexation of portions of Campbell and Bedford Counties, Virginia to the City of Lynchburg, Virginia effective December 31, 1975. CCOA, which is an unincorporated association composed of citizens of Lynchburg and the two counties, also seeks to enjoin the holding of elections pursuant to the decree and requests that the court award money damages in the amount of $500,000. The complaint asserts as bases for the action U.S.Const. Art. I, § 2, Art. IV, § 2, Amend. V, Amend. XIV, and Amend. XV,[1] as well as 42 U.S.C. §§ 1971, 1973, 1981, and 1983. The case is now before this court on motions to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b) (6).

On May 21, 1974 the Circuit Court of Campbell County, Virginia, sitting as a special three-judge annexation court as provided in § 15.1–1038 of the Code of Virginia,[2] entered a final decree ordering that certain portions of Bedford and Campbell Counties be annexed to the City of Lynchburg. A petition for writ of error and supersedeas to this order was denied by the Supreme Court of Virginia on January 20, 1975. On March 14, 1975, CCOA filed the present suit naming as defendants the City of Lynchburg and the individual members of the electoral boards for the three areas. Lynchburg and its electoral board members filed motions to dismiss and the other defendants answered generally. Thereafter, Campbell County was granted leave to intervene as a party plaintiff.

■■ A preliminary issue raised by the motions to dismiss concerns the effect of the state court proceedings on the present suit. Alleging that the issues presented by six of CCOA's seven causes of action were raised in the petition to the Virginia Supreme Court, Lynchburg and its electoral board members (both hereinafter referred to as defendants) argue that CCOA is barred from relitigating these issues. In considering this argument, it should initially be noted that CCOA and a number of its members were not involved as parties or privies in the state court. For this reason, the present suit is not barred by

1. The parties have not requested and the court does not deem necessary the convening, pursuant to 28 U.S.C. § 2281, of a three-judge court to hear this case. Although some of plaintiffs' claims might be construed as actions to enjoin the enforcement of state statutes on the grounds that they are unconstitutional, these claims appear to be clearly insubstantial. Where, as here, a complaint fails to present a substantial claim for injunctive relief, 28 U.S.C. § 2281 does not require a three-judge court.

*California Water Service Co. v. City of Redding*, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); *Ex Parte Poresky*, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); *Maryland Citizens for a Representative General Assembly v. Governor of Md.*, 429 F.2d 606 (4th Cir. 1970).

2. In Virginia, annexation by a city or town of an adjacent area can be accomplished only through a judicial proceeding. Va.Code Ann. § 15.1–1032 *et seq.* (1973), *as amended*, (Supp.1974).

the doctrine of res judicata. *See Partmar Corp. v. Paramount Corp.*, 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954); *Drummond v. United States*, 324 U.S. 316, 65 S.Ct. 659, 89 L.Ed. 969 (1945); *Duncan v. Town of Blacksburg*, 364 F.Supp. 643 (W.D.Va.1973). Furthermore, there is nothing in the record now before this court to establish that any of the issues raised by the present action were necessarily adjudicated in the state courts.[3] Therefore, collateral estoppel would also not be a proper ground for dismissal. *See Kauffman v. Moss*, 420 F.2d 1270 (3d Cir. 1970); *McNally v. American States Ins. Co.*, 382 F.2d 748 (6th Cir. 1967); *Miller v. Shell Oil Co.*, 345 F.2d 891 (10th Cir. 1965).

Turning to the substantive claims presented in the complaint, the plaintiffs allege as a first cause of action that Lynchburg has failed to comply with the Voting Rights Act of 1965, as amended, 42 U.S.C. §§ 1973–1973p.[4] Specifically, they assert a violation of § 5 of the Act, 42 U.S.C. § 1973c, which prohibits any state or political subdivision subject to its provisions from enforcing any change of "standard, practice, or procedure with respect to voting" prior to consideration of the change by a three-judge federal district court for the District of Columbia or, alternatively, by the Attorney General of the United States. Plaintiffs argue that the annexation court's neglect of this requirement and Lynchburg's failure to obtain the necessary approval have thereby violated a number of their constitutional and statutory rights.

■ In actions alleging violations of § 5, the power of local, federal district courts is quite narrow. · They can determine whether the challenged action is subject to § 5 and enjoin enforcement pending compliance by the state or its subdivision, but they lack jurisdiction to authorize implementation of the proposed change where it is found to be subject to § 5.[5] *Allen v. State Bd. of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); *Beer v. United States*, 374 F.Supp. 357 (D.D.C.1974); *see Holt v. City of Richmond*, 459 F.2d 1093 (4th Cir.), *cert. denied* 408 U.S. 931, 92 S.Ct. 2510, 33 L.Ed.2d 343 (1972). Insofar as the present case is concerned, there is no doubt that Virginia is subject to the Voting Rights Act of 1965. 30 Fed.Reg. 9897 (1965); *Virginia v. United States*, 386 F.Supp. 1319 (D.D.C.), *aff'd* 420 U.S. 901, 95 S.Ct. 820, 42 L.Ed.2d 833 (1975). It is now also well-established that annexations which enlarge the number of voters in a city are changes in a "standard, practice, or procedure with respect to voting" which are covered by § 5. *Perkins v. Matthews*, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971).

[7] Defendants in the present case have not challenged these conclusions but instead have offered a letter from

---

3. There is in fact no evidence presently available to this court for determining the issues adjudicated in state court. The decision of the circuit court is not reported, the order of the state supreme court denying the appeal does not reveal the issues considered, and the defendants have offered no evidence in support of this contention. Furthermore, plaintiffs assert in their briefs that the circuit court refused to hear any evidence on the issues now being raised.

4. Plaintiffs also charge in this cause of action that Lynchburg has failed to comply with 42 U.S.C. § 1971. However, this is only conclusorily asserted; no factual allegations are made to support the charge.

Similarly, in each of their causes of action, plaintiffs make limited factual allegations but then assert numerous constitutional and statutory violations based on these allegations. While the court has liberally construed plaintiffs' pleadings, this opinion is necessarily limited to a consideration of those claims supported by factual allegations.

5. The factual determination necessary for the issuance of a favorable declaratory judgment by the District of Columbia district court is that the "standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color." This determination must be made by the District of Columbia court and not the local district courts. 42 U.S.C. § 1973c; cases cited in text.

the office of the Attorney General of the United States which establishes that Lynchburg submitted the Bedford and Campbell annexations to the Attorney General for approval on May 15, 1975.[6] Although the Attorney General in a July 14, 1975 letter submitted by plaintiffs refused to grant approval on the basis of this submission, it was indicated in that letter that a reconsideration would be in order should Lynchburg undertake to elect its city council from single-member districts. Since Lynchburg appears to concede the applicability of § 5 and has undertaken to comply with its provisions, this court finds no basis for enjoining the annexation which is not to become effective until December 31, 1975. Furthermore, the state court's neglect of § 5 does not constitute a grounds for relief. Section 5 only requires that a state or subdivision seeking to implement a covered change comply with its provisions prior to enforcement of the change.

■■ CCOA asserts as two further causes of action that the annexation will effect unconstitutional reapportionments of Virginia's fifth and sixth U. S. Congressional districts and Virginia's eighteenth and twenty-third state senatorial districts. Section 24.1–4.2 of the Code of Virginia apportions U. S. congressional districts and it places Lynchburg and Bedford County in the fifth congressional district and Campbell County in the sixth congressional district. Thus, on the effective date of the annexation, residents of the annexed areas of Campbell County will be shifted from the sixth to the fifth congressional district. Section 24.1–14.1 of the Code of Virginia, which apportions state senato-

rial districts, also places portions of the annexed areas in a senatorial district different from that of Lynchburg, but an undecided question of state statutory construction leaves the effect of the annexation on these senatorial districts somewhat in doubt.[7] Regardless of the proper interpretation of this statute, however, the court can find no basis in either of these two asserted causes of action for granting the relief which CCOA requests at this time. While recognizing the "one-man, one-vote" rule of *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Wesberry v. Sanders*, 376 U.S. 1, 84 S.Ct. 526, 11 L. Ed.2d 481 (1964); *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) and subsequent apportionment cases, this court notes that the Supreme Court has often emphasized the proper role of the judiciary in such matters:

[L]egislative reapportionment is primarily a matter for legislative consideration and determination, and . . . judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so. *Reynolds v. Sims, supra* at 586, 84 S.Ct. at 1394.

*See also Connor v. Williams*, 404 U.S. 549, 92 S.Ct. 656, 30 L.Ed.2d 704 (1972); *Burns v. Richardson*, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966). Although it is true, as plaintiffs contend in their briefs, that courts may consider apportionment plans prior to their effective date, judicial intervention should occur only after the legislature has had an adequate opportunity to

---

6. The two letters submitted by the parties in connection with this cause of action have been considered by the court pursuant to the last sentence of Fed.R.Civ.P. 12(b). Accordingly, defendants' motions to dismiss have been treated as motions for summary judgment insofar as this cause of action is concerned.

7. The last sentence of § 24.1–14.1 provides that:

All references to districts, boundaries, streets and highways shall be interpreted to refer to those in existence on March one, nineteen hundred seventy-one. *Va.Code Ann.* § 24.1–14.1 (1973).

The precise effect of this sentence in the present situation is somewhat unclear since "districts" apparently refers to magisterial districts and not senatorial districts.

act. *Howell v. Mahan*, 330 F.Supp. 1138 (E.D.Va.1971), rev'd 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973), which is cited by plaintiffs in support of their contention, did involve review by the district court of a reapportionment plan prior to its effective date. The plan there had been devised by the state legislature, however, and was not merely the inadvertent result of an annexation. That case and others cited by plaintiffs are thus clearly distinguishable from the present situation where the legislature cannot be said to have had a reasonable opportunity to review the apportionment effects of the annexation.

■ Taking a somewhat different tack, CCOA also challenges the effect which the annexation will produce under § 24.1–12.1 of the Code of Virginia. That statute apportions state House of Delegate districts and it places Campbell County, Bedford County and Lynchburg each in separate electoral districts. It provides, however, that:

> Reference to a county or city herein shall, unless otherwise specifically provided, be construed to mean the territory comprising such county or city as it exists on March one, nineteen hundred seventy-one, notwithstanding future boundary changes by annexation . . . . Va.Code Ann. § 24.1–12.1 (1973).

The annexed areas will therefore remain in their present electoral districts although becoming part of Lynchburg following annexation. CCOA charges that this prospective failure of § 24.1–12.1 to maintain the integrity of the political subdivisions' boundaries in the apportionment of House of Delegate districts renders that statute unconstitutional as applied to the Lynchburg annexation. This claim also lacks merit. Although the Supreme Court has recognized that a state policy of respecting local county and city boundaries is a possible justification for some variance from the equal representation requirement in state legislative apportionments, *Mahan v. Howell*, 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.

2d 320 (1973), such a policy has not been elevated to the status of a constitutionally-protected right in and of itself. *See Id.* at 328, 93 S.Ct. 979, n. 9. This conclusion seems to be clearly suggested by the court's refusal to even consider such a policy as a possible rationale for population deviations in Congressional apportionment cases. *See, e. g., White v. Weiser*, 412 U.S. 783, 93 S.Ct. 2348, 37 L.Ed.2d 335 (1973); *Kirkpatrick v. Preisler*, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969). That there is no rational basis for plaintiffs' claim seems apparent. *See Mahan v. Howell, supra*, 333, 347–50, 93 S.Ct. 979 (Brennan, J., separate opinion).

Plaintiffs also challenge the annexation decree on the ground that residents of the annexed areas will have less voting strength in electing representatives to their local governing body following annexation. Since county board of supervisors representatives for the annexed areas are currently elected from single member districts ranging in size from 2009 to 4668 voters and Lynchburg's seven-member city council is elected at large by 25,059 voters, plaintiffs assert that the annexation decree invidiously discriminates against residents of the annexed areas by diluting their voting strength. In support of this claim plaintiffs apparently rely on *Reynolds v. Sims, supra*, and its progeny of Fourteenth Amendment apportionment cases as well as cases arising under the Fifteenth Amendment and the Voting Rights Act involving certain municipal boundary changes, *e. g., Gomillion v. Lightfoot*, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); *City of Petersburg v. United States*, 354 F.Supp. 1021 (D.D.C.1972), *aff'd* 410 U.S. 962, 93 S.Ct. 1441, 35 L.Ed.2d 698 (1973).

■ Although it is clear that the equal representation requirement of *Reynolds* is applicable to the elections of governing bodies for local political units, *Avery v. Midland County*, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), this only requires that one person's vote in a

given election be as nearly equal as practicable to other persons' votes cast in the same election. *Reynolds, Avery,* and other Fourteenth Amendment apportionment cases are only to that effect and are thus not supportive of plaintiffs' claim. While voters in the annexed areas may enjoy less voting strength in city council elections following annexation than they previously had in board of supervisors elections, they will participate in city council elections equally with all other Lynchburg voters. This is all that is required by the Fourteenth Amendment.

 Nor are *Gomillion* or *City of Petersburg, supra,* here apposite. These and other recent cases which have found that certain municipal boundary changes may, in some situations, be illegal abridgements of the right to vote have all involved Fifteenth Amendment and Voting Rights Act claims concerning denial or dilution of the voting rights of blacks. The thrust of plaintiffs' dilution claim, however, appears to be that all residents of the annexed areas will enjoy less voting strength in local elections following annexations; they do not assert any particular adverse effects on the voting rights of blacks as a basis for the claim. In the court's opinion, this does not constitute a violation of either the Fifteenth Amendment or the Voting Rights Act.

 In another claim which is related but somewhat different from the "loss of voting strength" argument, Campbell County contends that residents of the annexed areas will be entirely disenfranchised since they will have no opportunity to participate in the election of the Lynchburg City Council which will be serving when annexation becomes effective on December 31, 1975. A simi-lar argument was raised and rejected by this court in *Duncan v. Town of Blacksburg, supra.* The present claim is rejected for the reasons set forth in that opinion.[8]

 Plaintiffs' next claim is somewhat vague, but appears to be that citizens residing in the annexed area have a constitutional right to vote on annexation and the failure of the Virginia annexation statute to require their approval renders that statute unconstitutional. While citing the "privileges and immunities" and "due process" clauses, plaintiffs seem to place their principal reliance on the "equal protection" clause of the Fourteenth Amendment. In considering this claim it must be remembered that Virginia, unlike a number of states, provides for a judicial procedure for the approval of annexations. Va. Code Ann. § 15.1–1032 *et seq.* (1973). Approval of annexations in Virginia is subject to a judicial determination that specified statutory standards are satisfied and is not determined by the electoral process. Thus, plaintiffs' reliance on Fourteenth Amendment apportionment cases is once more misplaced for, while it is perhaps arguable that there is an unconstitutional discrimination when annexations are approved by an electoral process from which annexed citizens are excluded, *see Note, The Right to Vote in Municipal Annexations,* 88 Harv.L.Rev. 1571 (1975), there does not seem to be any basis for an equal protection claim when no one is granted the right to vote on the matter. This leaves plaintiffs to the task of establishing a right to vote on annexations. However, there appears to be no statutory requirement and the court fails to perceive such a right in the Constitution. In *Hunter v. City of Pittsburgh,*

---

8. Although *Duncan* rejected the constitutional challenge to Virginia's annexation statute, the state legislature apparently moved to alleviate the problem raised by that case through an amendment to the statute adopted in 1974. As a result of that amendment, Lynchburg may be required to hold a new city council election on the "first Tuesday in May following the effective date of the annexation." Va.Code Ann. § 15.1–1054 (Supp. 1974). This amendment thus makes plaintiffs' position considerably weaker than that of the plaintiffs in *Duncan* who were faced with the prospect of being unable to vote for their local representatives for some 18 months after annexation.

207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907), the Supreme Court stated:

> The state . . . at its pleasure may . . . expand or contract the territorial area [of the city], unite the whole or part of it with another municipality, repeal the charter and destroy the corporation. All of this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. 207 U. S. at 178–179, 28 S.Ct. at 46.

Although this sweeping language is subject to some exceptions, *e. g., Gomillion v. Lightfoot, supra,* it continues to be the law that states retain a broad discretion in regulating the boundaries of their political subdivisions, and there is no absolute constitutional right in citizens to vote on such matters. *See Murphy v. Kansas City, Mo.,* 347 F.Supp. 837 (W.D.Mo.1972); *Doyle v. Municipal Comm'n,* 340 F.Supp. 841 (D.Minn.), *aff'd* 468 F.2d 620 (8th Cir. 1972); *Adams v. City of Colorado Springs,* 308 F. Supp. 1397 (D.Colo.), *aff'd* 399 U.S. 901, 90 S.Ct. 2197, 26 L.Ed.2d 555 (1970). *Cf. Reynolds v. Sims, supra; Gomillion v. Lightfoot, supra.* Plaintiffs thus fail to state any basis for relief under this claim.

■ Finally, plaintiffs charge that the Virginia annexation statute, Va.Code Ann. § 15.1–1032 *et seq.* (1973), is unconstitutionally vague in that it provides no clear guidelines as to which annexation petitions are to be granted and which denied. The relevant section of the statute is § 15.1–1041 which provides in pertinent part that:

> The court shall determine the necessity for and expediency of annexation, considering the best interests of the county and the city or town, the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the

remaining portion of the county. Va. Code Ann. § 15.1–1041(b) (1973).

In considering statutory vagueness claims, courts will analyze a challenged statute in the light of prior judicial interpretations of that statute, and an otherwise vague or overbroad statute will be upheld where it has been given a sufficiently narrow and precise construction by the courts. *See Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); *cf. Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Cox v. New Hampshire,* 312 U. S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). In the present case, the "necessity for and expediency of annexation" standard has been construed on numerous occasions by the Supreme Court of Virginia. See cases annotated in Va. Code Ann. §§ 15.1–1041, 1042 (1973), (Supp.1974). These decisions have set forth with a reasonable degree of specificity the factors and criteria to be taken into account by the courts in annexation proceedings. *See e. g., City of Roanoke v. County of Roanoke,* 214 Va. 216, 198 S.E.2d 780 (1973); *City of Alexandria v. County of Fairfax,* 212 Va. 437, 184 S.E.2d 758 (1971); *County of Fairfax v. Town of Fairfax,* 201 Va. 362, 111 S.E.2d 428 (1959). Reviewing the Virginia annexation statute in the light of the gloss added by these cases and also taking into consideration the further facts that the statute is civil and not penal and that it deals with an area where the state is granted broad discretion, this court must conclude that there is no ground for holding this act unconstitutionally vague.

Having considered the allegations and claims presented in plaintiffs' complaint, this court concludes that plaintiffs have failed to state any claim upon which relief can be granted. Accordingly, this case is dismissed as to all named defendants.[9]

---

9. While only Lynchburg and its electoral board members filed motions to dismiss, "the court on its own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim." 5 Wright & Miller, Federal Practice and Procedure: Civil § 1357, and cases cited therein.