STATE OF NEW YORK, Petitioner,

v.

ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent,

Tennessee Valley Authority, Intervenor.

No. 82-3126.

United States Court of Appeals, Sixth Circuit.

Argued April 14, 1983.

Decided July 1, 1983.

Rehearing and Rehearing En Banc Denied Aug. 12, 1983.

James A. Sevinsky, David R. Wooley, Asst. Attys. Gen., New York State Dept. of Law, Environmental Protection Bureau, Albany, N.Y., James Periconi [Lead Counsel],

New York State Dept. of Law, Environmental Protection Bureau, Marcia J. Cleveland (argued), New York City, for petitioner.

William L. Want [Lead counsel] Catherine Cotter, U.S.E.P.A., Barry Neuman (argued), Dept. of Justice, Washington, D.C., for respondent.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Assoc. Gen. Counsel, Robert C. Glinski, Thomas C. Doolan, T.V.A., Knoxville, Tenn., for intervenor respondent TVA.

Before LIVELY and CONTIE, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

LIVELY, Circuit Judge.

The State of New York petitions for review of a "final rule" promulgated by the United States Environmental Protection Agency (EPA) which approved a revision of Tennessee's state implementation plan (SIP) for air pollution control. The revision permits an increase of from 1.2 to 2.8 pounds of sulfur dioxide ($SO_2$) per million British thermal units (BTU) of heat input at the Kingston, Tennessee power plant of the Tennessee Valley Authority (TVA). New York contends that EPA failed to make an adequate determination of the "interstate impacts" of the Tennessee SIP.

## I.

Prior to the present revision the Tennessee SIP divided the state into six classes of counties and applied specific emissions limits to $SO_2$ sources located in each class. In 1979 the State of Tennessee requested EPA to approve a revision which would add a seventh class of counties with a new emissions limit of 2.8 pounds of $SO_2$ per million BTU for sources with a capacity greater than 1000 BTU per hour. At the present time only Roane County is included in the new classification and the Kingston power plant is the only source affected. The revision reflects the emissions limit for Kingston contained in a consent decree entered into by EPA, TVA and a number of environmental groups in settlement of several consolidated cases in which TVA was the defendant. During the comment period for the present rule the Natural Resources Defense Council, Inc., one of the parties to the consent decree, supported the proposed revision "as a reasonable exercise of the discretion provided the State of Tennessee in Section 123(a)(2) of the Clean Air Act ..., consistent with the letter and intent of Section 123 and with the public interest."

More than nine months after the close of the public comment period the State of New York filed a "petition ... for disapproval of proposed revision" and comments. The thrust of the New York objections was that in proposing the revision Tennessee had virtually ignored the requirements of Section 110(a)(2)(E) of the Clean Air Act, as amended in 1977 (the Act), 42 U.S.C. § 7410(a)(2)(E) (1976 ed. Supp. V), which provides that the administrator of EPA shall approve an SIP if—

(E) it contains adequate provisions (i) prohibiting any stationary source within the State from emitting any air pollutant in amounts which will (I) prevent attainment or maintenance by any other State of any such national primary or secondary ambient air quality standard or, (II) interfere with measures required to be included in the applicable implementation plan for any other State under part C to prevent significant deterioration of air quality or to protect visibility, and (ii) insuring compliance with the requirements of section 7426 of this title, relating to interstate pollution abatement;
. . .

Despite the representations of New York, EPA stated in its final approval and promulgation that the revision is consistent with Section 110(a)(2)(E) and 126 of the Act. Both Sections 110(a)(2)(E) and 126 deal with interstate air pollution. Section 126, 42 U.S.C. § 7426 (1976 ed. Supp. V), provides in part:

§ 7426. **Interstate pollution abatement**

(a) **Written notice to all nearby States**

Each applicable implementation plan shall—

(1) require each major proposed new (or modified) source—

(A) subject to part C (relating to significant deterioration of air quality) or

(B) which may significantly contribute to levels of air pollution in excess of the national ambient air quality standards in any air quality control region outside the State in which such source intends to locate (or make such modification),

to provide written notice to all nearby States the air pollution levels of which may be affected by such source at least sixty days prior to the date on which commencement of construction is to be permitted by the State providing notice, and

(2) identify all major existing stationary sources which may have the impact described in paragraph (1) with respect to new or modified sources and provide notice to all nearby States of the identity of such sources not later than three months after August 7, 1977.

**(b) Petition for finding that major sources emit or would emit prohibited air pollutants**

Any State or political subdivision may petition the Administrator for a finding that any major source emits or would emit any air pollutant in violation of the prohibition of section 7410(a)(2)(E)(i) of this title. Within 60 days after receipt of any petition under this subsection and after public hearing, the Administrator shall make such a finding or deny the petition.

EPA found that TVA had "modeled the revision for its impact on $SO_2$ concentrations" and had determined that the highest concentrations occurred 1.5 kilometers from the Kingston plant. EPA acknowledged that the approved reference models used by the State of Tennessee were only valid to a distance of 50 kilometers from the source. However, it stated that "[o]ther reference techniques have not yet been established for accurately evaluating impacts beyond 50 km." Since the nearest point in New York State is 926 kilometers from the Kingston plant, EPA was unable to model for any possible air quality impact in New York.

EPA also declined to respond to New York's comments in the revision ruling because "the comments primarily concern the aggregate air quality impact of several sources, rather than the impact of this individual SIP revision." Instead, EPA decided to consider New York's comments as part of its determination of New York's pending Section 126 petition. EPA subsequently held a hearing on the Section 126 petition, but no ruling had been made at the time of submission of this case.

## II.

### A.

In asserting that EPA failed to make an adequate determination of the interstate impact of the proposed revision of the Tennessee SIP, New York makes a two-prong argument. New York contends, in the first place, that EPA made no determination of whether the cumulative impact of emissions controlled by the Tennessee SIP violates the requirements of Section 110(a)(2)(E). New York maintains that no Tennessee revision could be approved by EPA without reviewing the interstate impact of the total $SO_2$ emissions allowed before the revision to establish a "baseline of exported pollution" for the purpose of measuring the incremental effect on ambient air quality in other states of each subsequent revision. The second prong of the argument is that EPA erred in approving the revision because it made no determination at all of the impact of emissions from the Kingston plant on the level of suspended sulfate particulates in downwind states. It is known that $SO_2$ emissions from power plants combine with other elements in the atmosphere to form small particles known as sulfates. New York contends that EPA should have determined, before approving the revision of the Tennessee SIP, the extent to which transported sulfates interfere with New York's ability to attain or maintain the National Ambient Air Quality Standards for total suspended particulates.

EPA responds that it considered the interstate impact of the SIP revision to the limit of its currently approved models and

found no impermissible effects. It argues that Congress has given it the responsibility for choosing predictive tools and methods of measuring pollution and that it is not required to rely on models which it has not fully tested and in which it has no confidence. EPA asserts that it acted rationally in concluding on the basis of short-range modeling by approved methods and the isolation of the Kingston plant from other states that the revision met the requirements of Section 110(a)(2)(E). It also contends that it had no duty to model for the interstate effects of sulfates. The revision related to the $SO_2$ emissions from the Kingston plant and did not alter the particulate matter emissions limitations of Kingston. As with long-range $SO_2$ effects, EPA has not yet adopted or approved any models which can accurately predict particulate concentrations resulting from $SO_2$ emissions.

EPA finds no support in the Act or in case law for New York's contention that it must determine the cumulative interstate impact of other $SO_2$ emission sources within a state while reviewing a proposed revision which involves a single source. There is no requirement that it reassess the entire Tennessee SIP in approving the revised Kingston limitation, according to EPA. It construes the language of the Act and decisions from several circuits as supporting its view that it is required to approve any revision which, itself, meets the requirements of Section 110(a)(2).

### B.

New York raises a second, and distinct, issue related to the procedural requirements of the Act. It contends that the State of Tennessee failed to make an adequate record to support EPA's determination. The burden of compiling an adequate record to support an SIP revision is placed on the applicant state which has primary responsibility for implementing air quality standards. Tennessee supplied no record or analysis relating to the interstate impact of the revision. EPA erred, according to New York, in not requiring Tennessee to deal with the interstate impact of its proposed revision. It was an abuse of discretion for

EPA to approve the revision without collecting the necessary facts, and to rely on modeling which was incapable of making the required determinations. Further, New York argues, EPA could not rely on its intention to conduct future proceedings under Section 126 as justification for failing to make determinations required by Section 110(a)(2)(E) in the revision proceedings.

EPA responds that the record developed on the basis of approved modeling submitted by Tennessee was sufficient for a determination that no significant interstate pollution was likely to result from approval of the revision. EPA placed this analysis in the rulemaking docket and sought comment before publishing its proposed approval. No public comments were submitted to refute EPA's findings. EPA asserts that it complied with all procedural requirements and acted on the basis of an adequate record. EPA argues that its decision not to respond in this rulemaking (the revision proceedings) to New York's adverse comments was reasonable. The comments were not received until nine months after the close of the comment period, and dealt with the cumulative interstate impact of a number of midwestern $SO_2$ sources rather than the effect of emissions from the Kingston plant. EPA acted within its discretion, it maintains, in granting New York's alternative request that its submittal be treated as a petition for a Section 126 hearing.

### III.

### A.

New York contends that EPA was required to consider the cumulative impact of all Tennessee $SO_2$ sources while considering a proposed revision which applied to the Kingston plant alone. A similar argument was considered and rejected by the court in *State of Connecticut v. E.P.A.,* 696 F.2d 147, 168 (2d Cir.1982):

For purposes of a revision application "the proper inquiry is directed to the emission of a particular source of pollution." [*State of Connecticut v. EPA,* 656 F.2d 902,] 909 [ (2d Cir.1981) ] (quoting *Ohio Environmental Council v. EPA,* 593

F.2d 24, 30 (6th Cir.1979). The EPA, therefore, was not required to consider the cumulative impact of all New York sources on Connecticut when approving a special limitation for LILCO alone.

We agree. It is within EPA's discretion to determine the scope of its inquiry in connection with a proposed revision so long as the requirements of Section 110 are met.

New York questions EPA's determination that it may review a proposed revision for its effect on the levels of individual pollutants (in this case $SO_2$) without considering other effects. In *Connecticut Fund for Environment, Inc., v. E.P.A.,* 696 F.2d 169 (2d Cir.1982), the petitioners argued that it was unreasonable for EPA to consider the impact of a proposed revision on $SO_2$ concentrations only. The petitioner contended the agency should also consider the effect of the proposed revision on total suspended particulates. The court disagreed, holding that the Act authorized EPA's approach of developing separate plans for individual pollutants and that it would defer to the agency's determination that it lacks devices for measuring the impact on neighboring states from the secondary formation of sulfate particulates which occur after $SO_2$ is emitted. *Id.* at 175, 177. The proposed revision in the present case will permit an increase in $SO_2$ emissions only at the Kingston plant. EPA dealt with the impact of this increase on immediate ambient air quality and explained its inability to measure long-range effects while supplying an analysis which led to the conclusion that any such long-range effects would be minimal. It did not consider any impact which the revision might have on sulfates. We conclude that EPA did not violate the Act in approving the revision on the basis of its analysis limited to the effect of increased $SO_2$ emissions only.

### B.

■ New York's procedural arguments also must fail. The record made by the State of Tennessee indicated that the greatest impact of increased $SO_2$ emissions from Kingston occurred 1.5 kilometers from the plant and that the concentrations dropped 70% at an additional 2.4 kilometers from the plant. From these data EPA reasoned that increased concentrations would be miniscule by the time they reached the nearest border, that of Georgia 130 kilometers away. Obviously at the rate of diminution, any concentrations reaching New York would be even smaller. This analysis was placed in the rulemaking docket and public comment was sought. No comment refuting the analysis was received prior to publication of EPA's approval of the revision.

Of course, New York's real argument is that the Tennessee record was inadequate because there was no attempt to measure $SO_2$ concentrations beyond 50 kilometers and no attempt to measure transported sulfates at all. Without identifying any specific reference models or techniques now available to perform these measurements, New York contends that EPA acted arbitrarily and capriciously in failing to determine the interstate impact of the proposed revision with respect to both $SO_2$ and sulfates. The courts must, and do, defer to EPA on technical decisions involved in enforcement of the Clean Air Act. Its choice of reference models will not be overturned by a reviewing court so long as EPA's own guidelines are followed. *Cleveland Electric Illuminating Co. v. E.P.A.,* 572 F.2d 1150, 1161 (6th Cir.), *cert. denied,* 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978); *State of Connecticut v. E.P.A., supra,* 696 F.2d at 158–59. The fact that undisclosed and unevaluated predictive devices may exist which could determine the likely interstate effect of the revision more precisely than TVA's extrapolations from limited modeling does not mean that EPA acted arbitrarily or capriciously in basing its analysis on TVA's data. *Cleveland Electric Illuminating Co.,* 572 F.2d at 1163. We conclude that the record was sufficient.

### C.

■ Though New York attacks EPA's ruling in the present case on many grounds the fact remains that the ultimate conclusion of the agency is one which involved a basic administrative decision. Here New York sought relief under two separate pro-

visions of the Act, Sections 110(a)(2)(E) and 126(b). Both sections deal with interstate effects of air pollution. The proceedings under Section 110 for revision of the Tennessee SIP related to a single $SO_2$ emission source, the Kingston plant. It is clear, however, that New York was concerned with much more than the Kingston plant. With its petition for disapproval of the Tennessee revision, New York included petitions to disapprove seven other proposed revisions to state implementation plans. It asserted in its letter of transmittal to EPA that the eight proposed revisions would increase allowable $SO_2$ emissions from 17 large midwestern power plants. New York stated that it was submitting the eight petitions together because it was "imperative that the cumulative impacts of all of these SIP revisions be considered by EPA in a consolidated forum." EPA noted that New York's comments concerning the proposed revision to the Tennessee SIP "primarily concern the aggregate air quality impact of several sources, rather than the impact of this individual SIP revision."

The record fully supports EPA's conclusion that New York's concerns should be addressed in its determination of the Section 126 petition. There the aggregate impact of emissions from 17 separate sources would be the subject of inquiry. The decision to consider the claim of impermissible interstate impact from the increased emissions at the Kingston plant along with the other claims of impermissible interstate impact in Section 126 proceedings rather than separately in the Section 110 proceeding represented a rational choice by the agency. This choice provided New York with the "consolidated forum" it sought and provided EPA with a proceeding at which the cumulative impact of all of the claimed violations of the interstate limitations on emissions could be considered together. Final approval of the proposed revision to the Tennessee SIP was not required to await completion of the Section 126(b) proceedings. *Cf. State of Connecticut v. United States E.P.A.*, 656 F.2d 902, 907 (2d Cir. 1981).

The petition for review is denied.