**SOUTHWESTERN PENNSYLVANIA GROWTH ALLIANCE,**
Petitioner,

v.

**Carol M. BROWNER, Administrator, U.S. Environmental Protection Agency; United States Environmental Protection Agency, Respondents.**

No. 96–3761.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 4, 1997.

Decided May 26, 1998.

Christopher C. French (argued), William J. Labovitz, Kenneth S. Komoroski (briefed), John P. Englert, Lauren S. McAndrews, Kirkpatrick & Lockhart, Pittsburgh, PA, Virgil E. Alexander, Babst, Calland, Clements & Zomnir, Pittsburgh, PA, Barry M. Hartman (briefed), Kirkpatrick & Lockhart, Washington, DC, for Petitioner.

Catherine M. Flanagan (argued and briefed), Greer S. Goldman, U.S. Department of Justice, Civil Division, Appellate Staff, Environmental Defense Section, Washington, DC, Valdas V. Adamkus, U.S. Environmental Protection Agency, Office of Regional Counsel, Region V, Chicago, IL, Carol Browner, Administrator, Office of U.S. Environmental Protection Agency, Washington, DC, for Respondents.

Susan E. Ashbrook (briefed), Office of the Attorney General of Ohio, Environmental Enforcement Section, Columbus, OH, for Amicus Curiae State of Ohio.

Before: MERRITT and BATCHELDER, Circuit Judges; DOWD,* District Judge.

## OPINION

MERRITT, Circuit Judge.

This case arises under the Clean Air Act, 42 U.S.C. §§ 7401–7671q, as amended. The petitioner, the Southwestern Pennsylvania Growth Alliance, appeals the decision of the Administrator of the United States Environmental Protection Agency directly to this Court under 42 U.S.C. § 7607(b)(1). The petitioner argues that the EPA's decision to redesignate the Cleveland–Akron–Lorain, Ohio, area as an "attainment" area for ozone was arbitrary and capricious because the EPA failed to take into account the "regional" effect of ozone pollution—specifically the effect of the airborne transport of ozone and its precursors across from Ohio into Pennsylvania. The EPA counters that the petitioner does not have standing to bring this case and that the petitioner's claims fail on the merits because the EPA acted reasonably in making the redesignation. It argues that it is handling the regional transport problem separately in a comprehensive study and set of proposals. We find that the actions of the EPA were reasonable and within its administrative authority, and therefore we affirm the decision of the EPA.

### I.

Under the Clean Air Act, Congress directed the Administrator to set nationally uniform air quality standards known as "National Ambient Air Quality Standards." 42 U.S.C. § 7409. The Clean Air Act requires the EPA to promulgate these standards for six criteria pollutants, including ground-level ozone. Ozone is formed in the atmosphere when oxides of nitrogen and volatile organic compounds are emitted into the air in the presence of sunlight. S.Rep. No. 101–228, at 6 (1990), *reprinted in* 1990 U.S.S.C.A.N. 3385, 3392.

Under the Act, the Administrator designates areas as "nonattainment," "attain-

---

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

ment," or "unclassifiable," based upon whether the area meets the standards for a particular pollutant. 42 U.S.C. § 7407(d). Each area designated as "nonattainment" is further classified as marginal, moderate, serious, severe or extreme, depending on the degree to which the area exceeds the standards. 42 U.S.C. § 7511(a). The Act permits the governor of a state to request the Administrator to revise the designation for any area within the state. 42 U.S.C. § 7407(d)(3)(D).

The states are responsible for meeting the national standards. Each state must draft a State Implementation Plan for each pollutant. These State Implementation Plans provide for enforcement of national standards. See 42 U.S.C. § 7410. Among other things, these plans must include provisions prohibiting air emissions within the state from contributing significantly to nonattainment in other states or interfering with maintenance of the standards by other states. 42 U.S.C. § 7410(a)(2)(D). If the Administrator finds that a State's Implementation Plan is "substantially inadequate" to attain or maintain the standards or to mitigate adequately interstate pollutant transport, then the Administrator is authorized to "require the state to revise the plan as necessary to correct such inadequacies" within 18 months. 42 U.S.C. § 7410(k)(5). This procedure is called a "SIP [State Implementation Plan] call."

Before the EPA redesignates an area for ozone attainment, the EPA follows a two-step system. First, the EPA determines whether an area has met the applicable technical, chemical standards for "attainment" of the correct level of ozone in the area. Second, the EPA determines whether the area has met the additional requirements for redesignation to attainment.

In the first step, the EPA determines whether the area has met the "attainment" standard for ozone, called the "national primary standard." The EPA regulations define the standard for ozone as .12 parts per million. The "standard is attained when the expected number of days per calendar year with maximum hourly average concentrations above .12 parts per million ... is equal to or less than 1, as determined by appendix H." 40 C.F.R. Pt. 50. An area will have attained the standard if three or fewer instances over the standard are recorded over a three year period at any of the monitoring sites within the area.

In the second step, after an area has met the applicable standard for attainment, the EPA determines whether the area has met the additional four criteria for redesignation from nonattainment to attainment: (1) EPA must fully approve the applicable State Implementation Plan; (2) EPA must determine that improvement in air quality is due to permanent reductions in emissions; (3) EPA must fully approve a maintenance plan adopted by the State which demonstrates that the area will maintain the standard for at least 10 years after redesignation; and (4) the State has met all the requirements applicable to the area under section 7410 (requirements of State Implementation Plans) and part D. 42 U.S.C. § 7407(d)(3)(E).

In 1991, the Cleveland–Akron–Lorain, Ohio, area was designated as a moderate ozone nonattainment area. On November 15, 1994, the Governor of the State of Ohio submitted a request to the EPA to redesignate the area to attainment.

On June 15, 1995, the EPA published a Notice of *Proposed* Rulemaking, proposing to approve Ohio's *redesignation* request for the area contingent on final approval by the EPA of several elements of Ohio's State Implementation Plan. 60 Fed.Reg. 31,433 (1995). As part of this proposal, the EPA included the following section:

Transport of Ozone Precursors to Downwind Areas

Preliminary modeling results utilizing USEPA's [United States Environmental Protection Agency] regional oxidant model (ROM) indicate that ozone precursor emissions from various States West of the ozone transport region (OTR) in the northeastern United Sates contribute to increases in ozone concentrations in the OTR. The State of Ohio has provided documentation that VOC and NO subX emissions in the CAL [Cleveland–Akron–Lorain] nonattainment area are predicted to remain below attainment levels for the next ten years. Should emissions exceed attainment levels, the contingency plan will be triggered. In

addition, eight years after redesignation to attainment, Ohio is required to submit a revision to the maintenance plan which demonstrates that the NAAQS [National Ambient Air Quality Standards] will be maintained until the year 2105. The USEPA is currently developing policy which will address long range impacts of ozone transport. The USEPA is working with the States and other organizations to design and complete studies which consider upwind sources and quantify their impacts. The USEPA intends to address the transport issue through Section 110 based on a domain-wide modeling analysis.

60 Fed.Reg. at 31,439. The proposed rule stated that the comment period on redesignation closed on July 17, 1995. The petitioner did not submit comments on redesignation by the close of the comment period.

On June 29, 1995, the EPA published a direct *Final* Rule on *attainment*. In the rule, the EPA determined that the Cleveland, Toledo, Dayton and Cincinnati–Hamilton areas had achieved attainment. 60 Fed. Reg. 33,742 (1995). The action was based on Ohio's demonstration that the areas achieved the standards for ozone during the three year period from 1992 through 1994. The rule stated that the action would become effective on August 14, 1995, unless the EPA received adverse comments by July 31, 1995. On July 28, 1995, the petitioner submitted comments directed at the determination of attainment in a letter captioned "Adverse Comments on Determination of Attainment of Ozone Standard by Cleveland, Toledo, Dayton, and the Cincinnati–Hamilton Interstate Ozone Attainment Areas, as published in the June 29, 1995 Federal Register." J.A. at 861. In the letter, the petitioner claimed that there was "strong evidence" that the ozone problem in southwestern Pennsylvania is caused by emissions of ozone precursors from states to its west, particularly Ohio and West Virginia. J.A. at 862. The EPA also received a comment on the attainment rule from the New York State Department of Environmental Conservation. After receiving adverse comments on the direct final notice of attainment determination, the EPA issued a notice on August 25, 1995, withdrawing the direct final notice and announcing that the EPA would summarize and respond

to the comments in a subsequent final rule. 60 Fed.Reg. 44,277 (1995).

On May 7, 1996, the EPA took action on both the attainment and the redesignation, responding to comments on both actions. 61 Fed.Reg. 20,458 (1996). The interstate transport issue was raised as a comment to the attainment determination. The EPA responded that interstate transport is not relevant to the narrow issue of attainment of air quality standards but that it is relevant in a determination of redesignation.

The EPA has been separately studying the regional ozone transportation problem. In November 1997, the EPA issued a new proposed rule based in part on the technical work and recommendations generated by the Ozone Transport Assessment Group. 62 Fed.Reg. 60,318 (1997). The Ozone Transport Assessment Group is an informal advisory committee formed to assess the regional ozone transport problem and develop solutions. The Group includes representatives from the EPA, thirty-seven states in the Midwestern and Eastern portions of the country (including Ohio), and industry and environmental groups. Based in part on the Group's recommendations, the EPA's new proposed rule would require twenty-two states, including Ohio, to adopt and submit revised State Implementation Plans containing control measures that will mitigate the transport of ozone to other states. Under the new rule, Ohio would be required to reduce its emissions of oxides of nitrogen by approximately forty per cent from otherwise expected levels. 62 Fed.Reg. at 60,361.

The petitioner, Southwestern Pennsylvania Growth Alliance, is an organization of major manufacturers and local governments in the Pittsburgh–Beaver Valley Area. *See Southwestern Pennsylvania Growth Alliance v. Browner*, 121 F.3d 106, 111 (3rd Cir.1997) (same petitioner). On July 8, 1996, the petitioner filed this case in the Court of Appeals, as permitted by statute. The petitioner filed a related lawsuit in the Third Circuit, challenging the EPA's refusal to redesignate the Pittsburgh–Beaver Valley area to attainment. The petitioner lost the challenge in that case. *Southwestern Pennsylvania Growth Alliance v. Browner*, 121 F.3d 106 (3rd Cir.1997).

■ This Court must uphold the EPA's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Because we must review the EPA's interpretation of the Clean Air Act, we use the Supreme Court's two-step process for reviewing an agency's interpretation of a statute it administers. If "Congress has directly spoken to the precise question at issue ... the court ... must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If Congress has been silent or ambiguous about the "precise question at issue," then a reviewing court must defer to the agency's statutory interpretation if it is reasonable. *Id.* To uphold EPA's interpretation of a statute, the Court "need not find that it is the only permissible construction that EPA might have adopted but only that EPA's understanding of this very 'complex statute' is a sufficiently rational one to preclude a court from substituting its judgment for that of EPA." *Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 125, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985).

## II.

■ The EPA argues that this Court should dismiss the petitioner's case because the petitioner has no standing to challenge the EPA rule redesignating Ohio from nonattainment to attainment. Constitutional standing requires a showing of three elements: (1) an "injury in fact" that is concrete and particularized; (2) a connection between the injury and the conduct at issue—the injury must be fairly traceable to the defendant's action; and (3) likelihood that the injury would be redressed by a favorable decision of the Court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ The EPA argues that the petitioner has not shown standing because the petitioner fails to show that emissions transported from the newly redesignated Cleveland–Akron–Lorain area are greater than they would have been if the EPA had denied Ohio's redesignation application. The petitioner also asserts two other injuries, however, that provide standing. The petitioner argues that it is injured by the EPA's process of dealing with the regional transport of ozone. It says that this appeal is the only way it can attack the separation of the attainment decision from the regional transport decision. This fact together with its next argument establishes standing.

The petitioner also argues that southwestern Pennsylvania is at an economic disadvantage as a result of the Cleveland–Akron–Lorain redesignation. The redesignation enables Ohio businesses to pay less for ozone controls, while businesses in southwestern Pennsylvania are required to pay the higher costs for nonattainment areas. The EPA concedes that areas designated as attainment are subject to different requirements than nonattainment areas. Attainment areas are subject to the less costly New Source Review requirements under Part C of Title I, and the nonattainment areas are subject to the more costly New Source Review requirements under Part D of Title I. In addition, the EPA conceded during oral argument that if the Cleveland–Akron–Lorain area had not been redesignated to attainment, the area would have been subject to additional emissions controls.

If the EPA incorrectly redesignated the Cleveland–Akron–Lorain area as attainment, then that area has an economic advantage over its neighbors in southwestern Pennsylvania because businesses in the Ohio area unfairly pay less for ozone control measures. Thus, the southwestern Pennsylvania area, which is designated as nonattainment, suffers an economic disadvantage compared to its Ohio neighbor. This economic disadvantage is an alleged "injury in fact" directly caused by the EPA's decision, an injury that would be redressed if the decision were overturned by this Court. *See Central Arizona Water Conservation District v. United States Environmental Protection Agency,* 990 F.2d 1531 (9th Cir.1993) (water and irrigation districts had standing because EPA rule under Clean Air Act would result in added costs to the districts); *Connecticut v. United States Environmental Protection Agency,* 656 F.2d 902 (2nd Cir.1981) (Connecticut and New Jersey

permitted to petition for review of an EPA decision on a revision of the New York Implementation Plan); *New York v. Administrator, United States Environmental Protection Agency,* 710 F.2d 1200 (6th Cir.1983) (the State of New York appealed the decision of an EPA approval of a Tennessee State Implementation Plan revision); *New York v. United States Environmental Protection Agency,* 716 F.2d 440 (7th Cir.1983) (the State of New York appealed the decision of an EPA approval of an Illinois State Implementation Plan revision).

### III.

■ The petitioner argues that the EPA's decision to redesignate the Cleveland–Akron–Lorain area as an attainment area for ozone was arbitrary and capricious and should be overturned by this Court. As already discussed, once an area has satisfied the technical requirements of attainment, it must also meet four additional requirements before it is redesignated to attainment. One of these requirements is that the EPA approve Ohio's State Implementation Plan. The Act provides that each State Implementation Plan shall:

contain adequate provisions—

·(i) prohibiting, consistent with provisions of this subchapter, any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will—

(I) contribute significantly to attainment in, or interfere with maintenance by, any other State with respect to any such national primary or secondary ambient air quality standard ...

42 U.S.C. § 7410(a)(2)(D)(i)(I). The petitioner argues that the Ohio State Implementation Plan should not have been approved because it did not contain a provision prohibiting sources of pollution in one state from emitting pollutants in amounts which contribute significantly to nonattainment in another state.

The EPA argues that Congress left to the EPA the method of determining whether interstate transport is a problem and it says that it has properly addressed the problem in this case. Obviously, most land areas are upwind of some areas and downwind of others. According to the EPA, it is addressing the interstate transport problem by using a regional approach to consider the broad and complex regional nature of ozone transport with the limited resources of the agency. This approach is being implemented through the Ozone ˙Transport Assessment Group, which has studied the problem and recently made recommendations to address the problem. Based in part on these recommendations, the EPA issued a new proposed rule in November 1997. 62 Fed.Reg. 60,318 (1997). One portion of this rule requires Ohio to submit a revised State Implementation Plan that will reduce its emissions of oxides of nitrogen by approximately forty per cent from otherwise expected levels. 62 Fed.Reg. at 60,361.

At the time that the EPA approved the Ohio State Implementation Plan, the Ozone Transport Assessment Group had not yet made its recommendations. The EPA argues that while it was waiting for the Group to finish its studies and make recommendations, the EPA reasonably relied on its earlier approval of an Ohio State Implementation Plan which complied with the interstate transport requirement. The EPA presented in its exhibits a memorandum which confirms its position that it has consistently interpreted section 7607(d)(3)(E) as permitting the EPA to rely on prior approvals of State Implementation Plans when reviewing redesignation requests. The memorandum, which was written by John Calcagni, Director of Air Quality Management Division to the Directors of various Air Divisions, J.A. at 801, states: "Regions should not reconsider those things that have already been approved and for which the Clean Air Act Amendments did not alter what is required." In addition, Congress explicitly codified the same principle in 42 U.S.C. § 7410(n)(1).

The petitioner counters that the EPA should have reconsidered the ozone transport issue because the previous Ohio State Implementation Plan was approved in 1980,· before the 1990 amendments, and the 1990 amendments made the requirements for interstate transport more stringent. The EPA argues that the 1990 amendments did not change the standard for interstate transport. Rather, the EPA requested the change in the law

because prior to 1990 the EPA had enforced the stricter standards and wanted Congress to codify the EPA's longstanding interpretation of the earlier provision. The EPA's explanation is confirmed in 57 Fed.Reg. 13,-498, 13,556 n.34, which provides:

> The pre-amended 110(a)(2)(E) required SIP's to contain a provision prohibiting stationary sources from emitting an air pollutant in amounts which will "prevent attainment" in another State. The amended version of this language requires a SIP provision that prohibits emissions that will "contribute significantly to nonattainment" in another State. However, EPA interpreted the pre-amended language in the manner that Congress expressed in the amended Act.

We find that the EPA's approach to the regional transport problem is reasonable and not arbitrary and capricious. We therefore will not disturb the decision of the EPA to redesignate the Cleveland–Akron–Lorain area as an attainment area for ozone.