## DRUMMOND v. UNITED STATES.

No. 520.   Argued February 7, 8, 1945.—Decided March 5, 1945.

*Messrs. Roy St. Lewis* and *Chas. R. Gray* for petitioner.

*Mr. Roger P. Marquis,* with whom *Solicitor General Fahy, Messrs. J. Edward Williams* and *Norman MacDonald* were on the brief, for the United States.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

Mamie Fletcher Pitts, a full-blood Osage Indian, died on May 24, 1937, leaving land allotted to her as a member of her tribe.  Her husband, George Pitts, also a full-blood Osage, was appointed administrator of her estate in appropriate proceedings in an Oklahoma court.  His certificate of competency which had been granted him in

1910, § 2, Seventh, Act of June 28, 1906, 34 Stat. 539, 542, was revoked by the Secretary of the Interior on June 24, 1938. On September 9, 1938, he was adjudged to be the sole heir by the Oklahoma court, which entered an order directing distribution of Mamie's estate to him. Prior to that order, however, on July 12, 1937, Pitts had executed a mortgage of his wife's land to Drummond, the petitioner, to secure a contemporaneous promissory note. It is the validity of this mortgage, under the relevant Indian legislation, which is in controversy.

Petitioner in 1939 instituted a suit against Pitts in the state court to recover judgment on the note and to foreclose the mortgage. In that litigation Pitts, asserting the invalidity of the mortgage, was represented by a private attorney. Foreclosure was decreed, and this was upheld in the Supreme Court of Oklahoma. *Pitts* v. *Drummond*, 189 Okla. 574, 118 P. 2d 244.[1] Thereafter, the United States brought the present action in its own right and on behalf of Pitts to cancel the mortgage and to quiet title. The petitioner succeeded in the District Court, but the judgment was reversed by the Circuit Court of Appeals for the Tenth Circuit. 144 F. 2d 375. The conflict in result between the decision below and the earlier decision of the Oklahoma Supreme Court led us to grant certiorari, 323 U. S. 699.

A claim of *res judicata* meets us at the outset. Petitioner contends that the adjudication in *Pitts* v. *Drummond, supra,* binds the United States. To escape from the rule that the United States is not precluded from enforcing restrictions on Indian lands by any prior judgment in proceedings to which it was a stranger, *Bowling* v. *United States,* 233 U. S. 528, 534–535; *United States* v. *Hellard,* 322 U. S. 363, 366; and see Cohen, Handbook of Federal

---

[1] To complete the history of this litigation we note that certiorari was denied, 315 U. S. 814.

Indian Law (1941) 369, petitioner relies on the authorization by the Secretary of the Interior of the employment of Pitts' attorney and the approval of the latter's fee. If the United States in fact employs counsel to represent its interest in a litigation or otherwise actively aids in its conduct, it is properly enough deemed to be a party and not a stranger to the litigation and bound by its results. Compare *United States* v. *Candelaria,* 271 U. S. 432; 16 F. 2d 559, with *Logan* v. *United States,* 58 F. 2d 697. But to bind the United States when it is not formally a party, it must have a laboring oar in a controversy. This is not to be inferred merely because the Secretary of the Interior enables an incompetent Indian to protect his interests.

This brings us to the merits of the controversy—the validity of the mortgage given by Pitts as security for a loan before the Oklahoma court adjudged him to be his wife's heir. The decision turns on the construction of the Act of April 18, 1912, and more particularly on §§ 6 and 7, 37 Stat. 86. Section 6, so far as here relevant, removes restrictions on alienation of land inherited by heirs who have certificates of competency or who are not tribal members. After providing that allotment lands or funds shall not be liable or subjected to any claim arising prior to the granting of a certificate of competency, § 7 continues: "That no lands or moneys inherited from Osage allottees shall be subject to or be taken or sold to secure the payment of any indebtedness incurred by such heir prior to the time such lands and moneys are turned over to such heirs." These provisions have the characteristic infelicity of draftsmanship in Indian legislation which is such a fertile breeder of wasteful litigation. But the language, together with the light shed by the relevant Senate Report, makes the meaning clear enough.

Since Pitts incurred the debt to petitioner before the probate court adjudged him to be the heir, the transaction comes clearly within the invalidation of § 7. Petitioner contends that even though Pitts incurred the debt to him before the probate court decreed heirship, power to mortgage the land is authorized by § 6 which removed restrictions on land inherited by an heir having a certificate of competency which Pitts did have at the time of the mortgage transaction. But this result would render meaningless the sentence we have quoted from § 7 and disregard the purpose of § 7 as authoritatively stated in the Senate Report proposing the legislation. The object of § 7, according to the Senate Committee, was that "no land or money inherited shall be subject to any prior indebtedness." S. Rep. No. 127, 62d Cong., 1st Sess., p. 2. Since the sentence dealing with the invalidation is preceded by one which gives full protection against debts incurred prior to the issuance of a certificate of competency, the second sentence would have no function whatever unless it be construed to render unenforceable any claims against inherited property arising at any time before it was "turned over" to an heir. And this brings us to the final argument.

It is urged that § 7 is inapplicable because Mamie's land was never "turned over" to Pitts but came to him automatically on the death of his wife. The basis of this argument is that, inasmuch as Mamie was an incompetent, her estate was not subject to any claims against her and therefore necessarily would come to her heir unburdened. But § 7, in speaking of turning over lands to an heir, was surely not concerned with the mysteries of seisin. It dealt with the practicalities of ascertaining ownership through inheritance by appropriate proceedings. To that end § 3 of the Act of 1912 conferred probate jurisdiction upon

the state courts. *In re Thompson's Estate*, 179 Okla. 240, 65 P. 2d 442. The statute, that is, had in mind the judicial process of ascertaining the heir and the completion of that process by court action whereby the land was "turned over" to the ascertained heir. And so here, when the Oklahoma court decreed that Pitts was Mamie's heir, the land in the sensible use of the phrase "turned over" was turned over to Pitts.

Other arguments have not been overlooked but they need not be separately considered.

*Affirmed.*

Mr. Justice Jackson dissents.