**UNITED STATES of America, Plaintiff,**

v.

**LTV STEEL CO, INC., Defendant.**

**No. 1:98CV03012.**

United States District Court, N.D. Ohio, Eastern Division.

Sept. 20, 2000.

Arthur I. Harris, Office of the U.S. Attorney, Cleveland, OH, Lisa A. Cherup, Miriam L. Chesslin, Department Of Justice, Environmental Enforcement Section, Washington, DC, Lois J. Schiffer, Department of Justice, Environment & Natural Resources Division, Environmental Defense Section, Washington, DC, Peter Felitti, The U.S. Environmental Protection Agency, Chicago, IL, for United States of America, plaintiff.

Van Carson, Thomas J. Grever, Ellen Seibenschuh, Squire, Sanders & Dempsey, Cleveland, OH, James F. Allen, Squire, Sanders & Dempsey, Houston, TX, for LTV Steel Company, Inc., defendant.

## *MEMORANDUM & ORDER*

O'MALLEY, District Judge.

Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency [collectively "EPA"], brings this civil action against LTV Steel Company, Inc ["LTV"] for various violations of the Clean Air Act, 42 U.S.C. § 7401 et. seq. The EPA originally brought eight claims against LTV; three of those claims were resolved in a partial consent judgment on October 28, 1999. The five remaining claims against LTV stem from: (claim 1) opacity violations at LTV's C–5 blast furnace, (claim 2) opacity violations at LTV's C–6 blast furnace,

(claim 3) opacity violations at LTV's #1 BOF shop, (claim 4) SO2 violations at LTV's C–1 blast furnace stove, and (claim 5) SO2 violations at LTV's boiler #34.

On October 27, 1999, LTV filed a Motion for Partial Summary Judgment, asking this Court to dismiss a portion of EPA's first claim for relief. In particular, LTV asks the Court to dismiss the portion of EPA's first claim for relief that seeks civil penalties for alleged violations of federal regulations concerning the emission of "fugitive dust" from LTV's C–5 blast furnace at LTV's Cleveland Works facility on September 1, October 3, and October 4, 1995. LTV claims that it previously settled this claim with the City of Cleveland and that the federal government, therefore, cannot impose penalties for that allegedly unlawful activity.

On December 6, 1999, the EPA filed a cross motion for partial summary judgment on the same issue, asking the Court to allow the EPA to go forward with its claim. The EPA asserts that the City of Cleveland had no authority to settle on behalf of the Ohio EPA or the EPA, and that, even if it had, that settlement would not act as a bar to the EPA's enforcement efforts in this case.

For the reasons stated below, the Court finds that LTV's settlement with the City of Cleveland does not preclude EPA's enforcement of this action. LTV's motion for Partial Summary Judgment (docket no. 22) is **DENIED**. The EPA's cross-motion for partial summary judgment (docket no. 27) is **GRANTED**.

## I. BACKGROUND.

This case involves three levels of enforcement of Clean Air laws: local, state and federal. LTV argues that local enforcement of local laws bars federal enforcement of federal laws when, and to the extent, both laws cover the same activities on the part of LTV. The EPA argues that, as a separate sovereign, the federal government may enforce its own laws, regardless of the status of local enforcement efforts.

In 1970, Congress amended the Clean Air Act to require the EPA to establish "National Ambient Air Quality Standards" ["NAAQS"]. *See* 42 U.S.C. §§ 7408, 7409. The Act also required each state to adopt a plan, commonly referred to as a State Implementation Plan ["SIP"], to enable all areas within the state to achieve and maintain the NAAQS. The state must submit this plan to the EPA for approval. *See* 42 U.S.C. § 7410(a). If the EPA approves the state plan, it becomes the implementation plan for that state. *See* 42 U.S.C. §§ 7404, 7413. At that point, both the state and the federal government have the power to enforce that plan. *See* 42 U.S.C. § 7413; *General Motors Corp. v. United States*, 496 U.S. 530, 540, 110 S.Ct. 2528, 110 L.Ed.2d 480 (1990); *Train v. Natural Resources Defense Council, Inc.*, 421 U.S. 60, 92 at n. 27, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975) ("Emission limitations contained in an implementation plan may be enforced in several ways. Aside from whatever state procedures are available under the plan, § 113 of the Clean Air Act ... imposes a duty of enforcement on the Agency. The Agency may issue compliance orders ... or it may bring civil actions for injunctive relief."). In Ohio, therefore, both the Ohio EPA, and the federal EPA have concurrent enforcement authority over any party that violates the Ohio SIP.

The Ohio EPA has, in turn, delegated some of its authority to "local air pollution control authorities" using delegation agreements. *See* Ohio Rev.Code §§ 3704.111 and 3704.112. The Ohio EPA has entered into a delegation agreement with the City of Cleveland. *See* Pl.Ex. 15 "Local Air Agency Contract." In this contract, pursuant to state law, the Ohio EPA has delegated to the City of Cleveland the power to monitor local air pollution and *investigate violations* of the SIP, among several other things, but did not delegate to the City of Cleveland the authority to *enforce* the SIP on behalf of the Ohio

EPA. *See* O.R.C. § 3704 .112. The City of Cleveland may only recommend enforcement actions to the Ohio EPA. *See* Pl.Ex. 15 at Appendix A, p. 7.

The fact that the City of Cleveland is a "local air pollution control authority" to whom certain authority has been delegated under state law, does not, however, prohibit it from enacting its own local ordinances, and enforcing them, as long as enforcement of the city ordinances is not inconsistent with Ohio law. *See* id. at 1. The City of Cleveland has, indeed, enacted its own ordinances regulating air pollution, many of which overlap with state law. *See* Pl. Ex. 14. [City of Cleveland Ordinance, Title V, Air Pollution Control, Chapters 251–291]. If the City of Cleveland does enforce its own ordinances, it must consult with the Ohio EPA prior to making any enforcement decision, including settlement. *See* Pl.Ex. 15, App. A. at p. 7. Cleveland's ordinances do not provide for civil penalties; violations of the City ordinances are criminal misdemeanors that carry criminal penalties. *See* Pl.Ex. 14, City Air Pollution Control, Chapter 287.03.

Before the EPA filed this action in federal court, LTV dealt only with the City of Cleveland regarding the activities which are the subject of this partial summary judgment motion. On November 15, 1995, the City of Cleveland issued a notice of violation concerning visible emissions from the Cleveland Works C–5 blast furnace on September 1, October 3, and October 4, 1995. The notice stated that LTV had violated § 265.01 and/or § 277.07 of the City's Air Pollution Code and "related regulations of the Ohio EPA." The City did not disclose what those state regulations were. The City also notified the Ohio EPA of the notice. The notice informed LTV that it had 30 days to appeal the notice to the City's Board of Building Standards and Appeals. LTV did not appeal this notice.

On July 23, 1996, the City issued a separate notice to LTV of another violation concerning a blast furnace that is not a subject of these summary judgment motions. LTV did appeal this violation to the City's Board of Building Standards and Appeals. However, before that appeal was heard, on October 15, 1996, LTV and the City settled both this violation notice, and the earlier violation notice concerning the C–5 blast furnace. This settlement provides that it:

> represents the complete and final resolution, without admissions of any kind by either party, of two Notices of Violation that were issued by the City of Cleveland's Bureau of Air Pollution Control for LTV Steel Company. The Notices of Violations were issued for alleged incidents on November 15, 1995 related to a C–5 blast furnace and on May 31, 1996 related to a C–1 blast furnace.

*See* Def.Ex. B. In consideration for the City refraining from filing a civil action, or pursuing a criminal misdemeanor action based upon the Notices of Violation, LTV paid the City $2,500. The Agreement also states, directly above the signature line, that "This agreement cannot and does not bind the Ohio Environmental Protection Agency and cannot and does not excuse any violations of state or federal laws regarding air pollution control." *See* Def.Ex. B. The City sent a copy of the settlement to the Ohio EPA and the federal EPA.

On February 18, 1997, the federal EPA issued a notice of violation to LTV, which included opacity violations at the C–5 furnace. Some of the violations are based on visible emissions the City of Cleveland observed on September 1, October 3, and October 4, 1995, or activity which was among the subjects of LTV's settlement with Cleveland. Other violations are based on visible emissions that the EPA, itself, or readers under contract with LTV, observed. All of these alleged opacity violations at LTV's C–5 furnace are included in Count 1 of the complaint filed by the United States. LTV now asks for partial summary judgment on the portion of Count 1 that addresses those opacity violations at LTV's C–5 furnace that were in-

cluded in the October 15, 1996 settlement agreement between LTV and the City of Cleveland.

## II. SUMMARY JUDGEMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

## III. LAW & ARGUMENT.

LTV Steel asserts that its settlement with the City of Cleveland precludes the EPA from seeking penalties from LTV Steel for the same conduct. LTV presents two different arguments to support this assertion: (1) EPA's attempt to impose its own penalties for alleged air pollution violations settled with the City of Cleveland (a practice commonly called "overfiling") is not allowed under the Clean Air Act, 42 U.S.C. § 7401 et seq. (1994), and (2) the EPA's attempt to impose these penalties is barred by res judicata. The Court will address each of these arguments in turn.

### A. Overfiling and the Clean Air Act

LTV argues that it is unreasonable to interpret the Clean Air Act to allow the federal government to seek penalties for LTV's activities when LTV has entered into an agreement with the City of Cleveland by which LTV agreed to pay a penalty for engaging in those same activities. LTV's arguments are based on the premise that EPA cannot seek penalties under federal law once a state has enforced its own SIP under state law. This is not, however, the situation LTV faces. LTV settled with the City of Cleveland for violation of the City of Cleveland's ordinances. The City of Cleveland does not have authority to settle on behalf of the Ohio EPA, see O.R.C. § 3704 .112; Pl.Ex. 15 at Appendix A, p. 7., and did not purport to settle on behalf of the Ohio EPA, as it clearly stated in the settlement agreement. See Def.Ex. B ("This agreement cannot and does not bind the Ohio Environmental Protection Agency and cannot and does not excuse any violations of state or federal laws regarding air pollution control.").[1] Thus, there has been no state enforcement of the SIP; there has merely been municipal enforcement of the municipal code. LTV has not shown that the Ohio EPA was involved in any way with its settlement with the City of Cleveland, except to point out that Ohio EPA received notice of it. Indeed, the settlement agreement with the City of Cleveland does not even reference the Ohio SIP.

Ohio EPA's lack of involvement in LTV's settlement with the City of Cleveland negates all of LTV's arguments regarding the preclusive effect of an Ohio EPA settlement on a federal EPA enforcement action. Even if, however, LTV's settlement with the City of Cleveland for violation of the City's air pollution code somehow did act as a settlement with the state of Ohio for violation of Ohio's SIP, as LTV assumes but does not adequately explain, the settlement still would not bar federal enforcement under the Clean Air Act.

LTV bases it argument that a state settlement precludes federal enforcement on *Harmon v. Browner*, 191 F.3d 894 (8th Cir.1999). In *Harmon*, the Eighth Circuit held that the EPA cannot seek penalties under the Resource Conservation and Recovery Act ["RCRA"] after a state enforcement agency has settled with an entity, because the state enforcement agency acts "in lieu of" the EPA and its actions have the "same force and effect" as an EPA action under RCRA. *Id.* at 898. *See also* 42 U.S.C. § 6926(b). According to *Harmon*, settlement with the state operates as settlement with the EPA, and the EPA may not overfile actions already settled with the state anymore than it could prosecute an entity twice for the same violation.

The Eighth Circuit's statutory analysis in *Harmon* was based on language it found in RCRA, language which is not found in the Clean Air Act. The RCRA language to which the *Harmon* court cites expressly provides that state enforcement agencies operate "in lieu" of federal enforcement

---

1. LTV's characterization of this language as "mere boilerplate" fails to convince the Court that it should ascribe no meaning to this clause. LTV's argument that the EPA derives its authority from Congress and, thus, cannot overfile when the *state* has previously resolved a violation, has nothing to do with whether this settlement, as it states it does, only resolved LTV's violation of the City of Cleveland's local air pollution code.

agencies and that state enforcement has the "same force and effect" as an EPA action. *Id.* at 898; 42 U.S.C. § 6926(b). This language is not found in the Clean Air Act; the Eighth Circuit's analysis of the validity of overfiling under RCRA is simply not applicable to the question of whether overfiling is permissible under the Clean Air Act.[2]

Unlike RCRA, the Clean Air Act contains language in its enforcement section which seems to anticipate overfiling. Thus, the Act states that "in determining the amount of any penalty to be assessed under this section ..., the court [ ] shall take into consideration ... payment by the violator of penalties previously assessed for the same violation." *See* 42 U.S.C. § 7413(e). *See also United States v. Vista Paint Corp.*, EDCV 94-0127 RT, 1996 WL 477053, *15 (C.D.Cal.1996) (in federal enforcement case for violation of emission limitations contained in California SIP, defendant's payment of a penalty for same violations to local air district was a "slightly mitigating factor" considered by the Court in assessing a penalty), *aff'd* 129 F.3d 129 (9th Cir.1997).[3] This language implies that federal overfiling of state enforcement actions was not only *not* barred, it was actually contemplated by Congress when drafting the Clean Air Act. Indeed, this statutory language would have been unnecessary if, once a violator paid a penalty to *any* enforcement entity, it was immune from enforcement actions by any other sovereign.

While the Sixth Circuit has not directly addressed the issue, district courts to do so have found that overfiling is permitted under the Clean Air Act.[4] In *U.S. v. Harford Sands, Inc.*, 575 F.Supp. 733 (D.C.Md.

2. *See* Emily R. Zahren, Comment, *Overfiling Under Federalism: Federal Nipping at State Heels to Protect the Environment*, 49 EMORY L.J. 373 (Winter 2000) (arguing that the Clean Air Act contains different language than RCRA and, thus, is not subject to the same attack against overfiling used in *Harmon*).

3. LTV's attempt to explain away this provision by stating that "Congress intended that defendants could deduct *voluntary* payments, as payments for some, but not all of the days of violation proven" does not meaningfully distinguish the situation it faces from the situation it believes Congress intended. LTV's settlement with the City of Cleveland, even though in response to a notice of violation, was still a "voluntary payment for some, but not all, of the days of violation" the EPA asserts it can prove. LTV had the option to appeal and, hence, adjudicate the City's notice of violation, but chose not to.

4. While the Sixth Circuit has twice touched on the issue, it has never done so in a manner which squarely addresses the question presented here. In *Buckeye Power, Inc. v. Environmental Protection Agency*, 481 F.2d 162 167 n. 2 (6th Cir.1973), upon which LTV relies, the Sixth Circuit, stated in passing in a Clean Air Act case that:

> It would seem to us that the Court which first acquired jurisdiction of enforcement proceedings would have exclusive jurisdiction to proceed to determine the litigation, and its judgment would be res judicata of the issues litigated. In view of the fact that both federal and state courts acquire jurisdiction by a single Act of Congress, we do not think that Congress ever intended that the parties defendant to enforcement proceedings would be subject to double penalties, *i.e.* penalties in each jurisdiction.

This more than twenty-five year old statement, relegated to a footnote by the Court, had nothing to do with the panel's holding and included no analysis, or even discussion, of the relevant statutory language. It is, accordingly, not meaningful to this Court's analysis of the issue before it.

Similarly, in *U.S. v. Louisville Edible Oil Products, Inc.*, 926 F.2d 584, 587 (6th Cir. 1991), upon which the United States relies, the Sixth Circuit emphasized that federal and local governments are separate sovereigns with the right to enforce their own environmental laws, and rejected the defendant's contention that the local Air Pollution Board was merely a "tool" of the federal government. The Court made these statements, however, in the context of a double jeopardy challenge to federal criminal charges for conduct which previously had been the subject of fines from the local authority. The panel addressed the constitutional limits of governmental sovereignty; it neither addressed the language of the Clean Air Act which is at issue here, nor ruled upon the interplay between governmental agencies involved in civil enforcement of that Act. *Edible Oil*, thus, is also not particularly helpful here.

1983), for example, the court rejected the defendant's contention that its settlement with state environmental officials responsible for enforcing the SIP under the Clean Air Act should bar federal enforcement efforts regarding the same conduct. The court did so, moreover, even though the defendant had reached an agreement with state officials on a compliance schedule to rectify the very emissions issues which were the subject of an injunction and a civil penalty sought by the EPA. The court pointedly stated, "a violation of the federal provisions just cited [§ 7413(a) & (b) (failure to comply with an order issued by the federal EPA) ] is unaffected by the defendant's cooperation with the state. While the defendant's claimed cooperation will affect this Court's determination of the amount of a civil penalty to be levied against the defendant, such agreement does not affect the underlying liability." *See Id.* at 735.

Likewise, in *U.S. v. SCM, Corp.*, 615 F.Supp. 411 (D.C.Md.1985), the court found no bar to a federal EPA enforcement action against a defendant, even though that defendant had already entered into a state administrative consent order regarding its air emissions. Citing *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the defendant argued that the court should abstain from consideration of the federal enforcement action because the defendant had reached an agreement with the state EPA in response to a state notice of violation shortly before the federal EPA initiated its own enforcement action. The defendant asserted that the case should be stayed until it had a chance to comply with the state settlement. The *SCM* court found the *Colorado River* doctrine inapplicable because "as between state and federal courts, ... the rule is that 'the pendency of an action in the state court is no bar to proceedings

concerning the same matter in the Federal court having jurisdiction.'" *See Id.* at 416 (*quoting Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236). The court reasoned that the *Colorado River* decision was based, in large part, on the fact that the statutory language at issue there evidenced a clear congressional desire to displace federal enforcement once state proceedings had been initiated. The court found "no similar expression in the Clean Air Act of a congressional intent to allow state administrative actions to preclude federal enforcement of federal standards." *Id.* at 419. "While the act clearly contemplates enforcement of some of its provisions by state authorities, there is no suggestion in the statute that enactment by states of their own penalty provisions under state law acts to displace the penalties provided for by Congress." *Id.*

Indeed, the *SCM* court concluded that it was entirely appropriate to subject a defendant to such dual enforcement. "In a federal system, each person and entity is subject to simultaneous regulation by state and national authority ... That the same acts by the defendant subject it to state actions under Title 2 of the Maryland Health and Environmental Code as well as EPA action under the Clean Air Act is no more anomalous than the situation of the bank robber who finds himself simultaneously prosecuted for violations of both federal and state laws arising from a single criminal act." *Id.* at 420.[5]

■ The conclusions in *Harford* and *SCM* are consistent with EPA's own interpretation of the Clean Air Act. When a statute is ambiguous, or congressional intent unclear, this Court must generally defer to an agency interpretation of that statute, as long as that interpretation is reasonable. *See Chevron U.S.A., Inc., v. Natural Resources Defense Council, Inc.,*

---

5. While this Court is less convinced of the propriety of dual enforcement in the civil penalty context, it is up to Congress to decide that question. The question for this Court is

not whether Congress *should* authorize overfiling, but, rather, whether Congress *did* authorize it.

467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (deferring to EPA's interpretation of language contained in the Clean Air Act); *Southwestern Pennsylvania Growth Alliance v. Browner*, 144 F.3d 984, 988 (6th Cir.1998) (same). "To uphold EPA's interpretation of a statute, the Court 'need not find that it is the only permissible construction that EPA might have adopted but only that EPA's understanding of this very 'complex statute' is a sufficiently rational one to preclude a court from substituting its judgment for that of EPA.'" *Southwestern Pennsylvania Growth Alliance v. Browner*, 144 F.3d at 988 (*quoting Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 125, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985)).

The EPA has consistently interpreted the Clean Air Act to allow concurrent enforcement on both state and federal levels. *See* Pl.Ex. 19, Ex. 20 at pp. 21–25, Ex. 21 at pp. 21–22, Ex. 22 at pp. 6, 9, and Ex. 23 at pp. 10–14. As the *SCM* court noted, this interpretation is neither unreasonable nor particularly surprising. As the EPA explains, dual enforcement helps ensure effective enforcement without the need to publicly declare the state in derogation of its enforcement duties or displace the state entirely in the enforcement scheme. *See* 42 U.S.C. § 7413(a)(2) (permitting EPA to take over state's enforcement actions). It accomplishes this end, moreover, without extreme prejudice to those subject to enforcement. While the need to "respond to two masters" is never pleasant, penalties paid to one enforcement arm may be used to offset those otherwise payable to another. *See* 42 U.S.C. § 7413(e). Thus, despite LTV's protestations, the language of the Clean Air Act itself ameliorates the sting of overfiling.

■ Thus, while the Clean Air Act contemplates a cooperative arrangement between federal and local enforcement arms, it does not allow one such agency to wholly displace the other via a rush to judgment. Local and federal governments can act as a check on one another, thereby ensuring that local concerns do not displace national environmental policy, and vice-versa. The Court concludes, accordingly, that the language of the Act, federal precedent, deference to the EPA and common sense all lead to the conclusion that it is permissible for the EPA to seek penalties against a defendant for a violation of the Clean Air Act even after that defendant has agreed to pay a penalty to a local environmental enforcement agency in connection with that same conduct.

## B. Overfiling and Res Judicata

LTV also argues that the penalties EPA seeks for violations arising out of the operation of the C–5 furnace, are, to the extent the subject of an agreement with the City of Cleveland, precluded by res judicata.[6] There is no reasonable basis for this contention, however.

■ When asked to give preclusive effect to a state court judgment, the Court must look to the law of the rendering state. *See Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir.1997). In order to show that res judicata bars an action, therefore, the defendant must show, (1) a final judgment or decree rendered on the merits by a court of competent jurisdic-

---

6. The EPA argues that LTV waived the affirmative defense of res judicata because it did not raise it in its answer to the complaint. *See Phelps v. McClellan*, 30 F.3d 658 (6th Cir.1994) ("Generally, a failure to plead an affirmative defense ... results in the waiver of that defense and its exclusion from the case."). Because the EPA was not prejudiced by LTV's decision to raise this affirmative defense for the first time in its motion for summary judgment, however, as evidenced by the EPA's successful argument against the application of that doctrine here, the Court declines to find that LTV waived this defense. *See e.g. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir.1993) (holding that defendant does not waive an affirmative defense if defendant raises it at a pragmatically sufficient time, such as summary judgment, and the defendant's failure raise the affirmative defense in its answer did not cause the plaintiff prejudice).

tion; (2) concerning the same claim or cause of action as that now asserted; (3) between the same parties as are in the current action or their 'privies.' *See State ex. rel Schneider v. Bd. of Educ. of N. Olmsted City School Dist.,* 39 Ohio St.3d 281, 530 N.E.2d 206 (1988).

 Even if one assumes that the LTV settlement with Cleveland constitutes a "final judgment or decree on the merits" (an assumption the EPA disputes somewhat persuasively), LTV still does not satisfy either the second or third element of this test. LTV does not satisfy the second element because the City's settlement was premised upon an alleged violation of *local* law while the current enforcement action is premised upon claimed violations of *federal* law. LTV settled with the City of Cleveland for violation of a pollution control local ordinance. The EPA is asserting a cause of action under the federal Clean Air Act. There is, thus, a wholly different body of law at issue in this proceeding, rendering it a wholly different claim or cause of action from the one LTV settled with the City of Cleveland.

 The City of Cleveland and the EPA are also not in privity with one another for purposes of res judicata. A general identity of interests, *i.e.,* an interest in clean air, is not alone sufficient to bind the federal government to a decision in which it did not participate. Any preclusive effect must be determined, instead, by the level in which the United States actually participated in the previous enforcement efforts. *See Drummond v. United States,* 324 U.S. 316, 318, 65 S.Ct. 659, 89 L.Ed. 969 (1945). In order to show that the United States was in privity with the City of Cleveland, the United States must have maintained a "laboring oar" in the earlier proceedings and settlement. *See Montana v. United States,* 440 U.S. 147, 155, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (*quoting Drummond v. United States,* 324 U.S. at 318, 65 S.Ct. 659). *See also U.S. v. State of Texas,* 158 F.3d 299, 306 (5th Cir.1998). "If the United States, in fact, employs

counsel to represent its interest in a litigation or otherwise actively aids in its conduct, it is properly enough deemed to be a party and not a stranger to the litigation and .bound by its results." *See Drummond,* 324 U.S. at 318, 65 S.Ct. 659. To determine whether the United States has a laboring oar in a controversy, the Court may look to such things as whether the United States orders another party to file a lawsuit or, in this case, issue a notice of violation, pays the attorney's fees, reviews the complaint or notice, files an amicus brief, directs an appeal or the abandonment of that appeal or actually engages in settlement negotiations. *See, e.g., Montana v. United States,* 440 U.S. at 155, 99 S.Ct. 970. The EPA in this case has done none of these things. The only involvement the EPA had in this case is that it was sent a copy of the final settlement. The EPA, thus, had no "laboring oar" in the City of Cleveland's prior enforcement efforts or in its settlement with LTV.

The Court also declines to find privity by concluding that the City of Cleveland acted "in lieu" of the EPA when it settled with LTV or was the alter ego of the EPA for air pollution purposes. While LTV claims *Harmon* counsels such a conclusion, *Harmon* was not a Clean Air Act case. As noted previously, Harmon turned on the peculiar language of RCRA and that language simply does not appear in the Clean Air Act.

*Johnson's Island, Inc. v. Board of Township Trustees of Danbury Township,* 69 Ohio St.2d 241, 431 N.E.2d 672 (1982), also does not justify the conclusion that privity can be premised solely on the fact that two parties or two entities ultimately desire the same result—in this case, cessation of toxic air emissions. In *Johnson's Island* a developer defended a citizen's suit on grounds that his proposed use of a disputed area of land was authorized under existing zoning ordinances. When he lost in that action, the developer brought an action against the City, seeking a declaration that the zoning laws at issue in the

earlier action were unconstitutional. The Ohio Courts found the second action barred because the developer had been provided, but chose to forgo, the opportunity to litigate the constitutional question in the first action. Such forum shopping was deemed inappropriate by the Ohio Supreme Court in those unique circumstances. "Privity" was found between the citizens in the first action and the city in the second.

The unique circumstances present in *Johnson's Island* are not present here. The federal law upon which the EPA relies in this action was neither relied upon nor adjudicated in the settlement between LTV and the City of Cleveland. There is no effort here on the part of the EPA to escape an unfavorable judgment in an earlier proceeding (an effort the Ohio Supreme Court attributed to the developer in *Johnson's Island*). Quite simply, there is no proceeding to which the EPA was a party or in which the legal issues it raises here have been addressed.[7]

Thus, because (1) the EPA's claim is based on the Clean Air Act, a wholly different law than the City of Cleveland's Air Pollution Code, (2) the EPA had no "laboring oar" in the City of Cleveland's settlement with LTV, (3) the Clean Air Act does not statutorily support finding privity between the City of Cleveland and the EPA, and (4) issues raised by the EPA have never been adjudicated, this Court does not find that LTV's prior settlement with the City of Cleveland has any res judicata effect on the claims before it.

## IV. CONCLUSION.

Because LTV's settlement with the City of Cleveland has no preclusive effect on the EPA's enforcement action at issue here, LTV's Motion for Partial Summary Judgment is **DENIED** and the United States' Motion for Partial Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

---

7. In *United States v. ITT Rayonier,* 627 F.2d 996 (9th Cir.1980), the Ninth Circuit found that an action by the Washington Department of Ecology ["DOE"] to enforce terms of a permit under the Federal Water Pollution Control Act barred a later EPA action on the same permit. *Rayonier* is distinguishable from this case on numerous grounds, including the fact that the earlier proceedings did, unlike here, involve violations of the same statutory provisions and that there was a full adjudication on the merits resulting in a court-ordered remedy. The Ninth Circuit did not, moreover, premise its "privity" determination on a mere alignment of interests as LTV contends; the DOE and EPA were deemed in privity because the Court found that they were both charged with enforcing a single permit under the same law.