**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 4 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

    v.

POWER ENGINEERING COMPANY;
REDOUBT, LTD.; RICHARD J.
LILIENTHAL,

      Defendants - Appellants,

------------------------

AMERICAN IRON AND STEEL
INSTITUTE; AMERICAN PETROLEUM
INSTITUTE; CHAMBER OF
COMMERCE OF THE UNITED STATES
OF AMERICA; ENVIRONMENTAL
FEDERATION OF OKLAHOMA;
MICHIGAN MANUFACTURERS
ASSOCIATION; NATIONAL
ASSOCIATION OF MANUFACTURERS;
WESTERN STATES PETROLEUM
ASSOCIATION; STATE OF MAINE;
STATE OF ARKANSAS; STATE OF
CALIFORNIA; STATE OF
CONNECTICUT; STATE OF ILLINOIS;
STATE OF MONTANA; STATE OF NEW
YORK; STATE OF VERMONT; STATE
OF WEST VIRGINIA,

      Amici Curiae.

No. 01-1217

John F. McBride (Robert T. McAllister of Robert T. McAllister, P.C., Denver, Colorado, with him on the briefs), Denver, Colorado, appearing for Appellant.

Robert H. Oakley, Attorney, Department of Justice, Washington, DC (John C. Cruden, Acting Assistant Attorney General, Environment & Natural Resources Division, John W. Suthers, United States Attorney, John A. Bryson and John N. Moscato, Attorneys, Department of Justice, Washington, DC; and Stephen D. Taylor, Assistant United States Attorney, and Thomas Sitz, Office of Enforcement, Compliance and Environmental Justice, Environmental Protection Agency, Denver, Colorado, with him on the brief), appearing for Appellee.

G. Steven Rowe, Attorney General, and John H. Edwards, Assistant Attorney General, Natural Resources Division, State of Maine, Department of the Attorney General, Augusta, Maine; Mark Pryor, Attorney General, State of Arkansas, Little Rock, Arkansas; Bill Lockyer, Attorney General, State of California, San Diego, California; Richard Blumenthal, Attorney General, State of Connecticut, Hartford, Connecticut; James E. Ryan, Attorney General, State of Illinois, Chicago, Illinois; Mike McGrath, Attorney General, State of Montana, Helena, Montana; Eliot Spitzer, Attorney General, State of New York, New York, New York; William H. Sorrell, Attorney General, State of Vermont, Montpelier, Vermont; and Darrell V. McGraw, Jr., Attorney General, State of West Virginia, Charleston, West Virginia, filed an amicus curiae brief in support of the United States Environmental Protection Agency.

Scott M. DuBoff, Wright & Talisman, P.C., Washington, DC; Thomas M. Sneeringer, Washington, DC, Counsel for American Iron and Steel Institute; G. William Frick and Ralph J. Colleli, Jr., Washington, DC, Counsel for American Petroleum Institute; Stephan A. Bokat and Robin S. Conrad, National Chamber Litigation Center, Inc., Washington, DC, Counsel for Chamber of Commerce of the United States; James Barnett, Kerr, Irvine, Rhodes & Ables, Oklahoma City, Oklahoma, Counsel for Environmental Federation of Oklahoma; Frederick R. Damm, Clark Hill, P.L.C., Detroit, Michigan, Counsel for Michigan Manufacturers Association; Jan Amundson, Washington, DC, Counsel for National Association of Manufacturers; Gregory McClintock and Brian Wall,

Mayer, Brown & Platt, Los Angeles, California, Counsel for Western States Petroleum Association, filed an amicus curiae brief in support of Appellants Power Engineering Company, *et al.*

---

Before **TACHA**, Chief Circuit Judge, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

The State of Colorado brought an enforcement action against defendants Power Engineering Company, Redoubt Limited, and Richard Lilienthal (collectively referred to as "PEC") for violations of the Colorado Hazardous Waste Management Act. Plaintiff United States, acting on behalf of the Environmental Protection Agency ("EPA"), filed its own lawsuit against PEC for the same violations, seeking financial assurances. The district court denied PEC's motion for summary judgment, finding that the EPA's lawsuit was not barred by statute or by res judicata. We exercise jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) and AFFIRM.

## I. Background

Power Engineering Company has operated a metal refinishing and chrome electroplating business in Denver, Colorado since 1968. Redoubt Limited owns land and buildings leased and used by Power Engineering. Richard Lilienthal is an officer of both Power Engineering and Redoubt, as well as the sole shareholder

of both companies. Each month Power Engineering produces over 1000 kilograms of waste, including arsenic, lead, mercury, and chromium. This waste is covered by the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992k, and is defined as "hazardous." After the Colorado Department of Public Health and Environment ("CDPHE") learned of a discharge of hexavalent chromium into the Platte River, it conducted inspections of PEC and discovered that chromium emanating from PEC was contaminating the groundwater. It also found that PEC treated, stored, and disposed of hazardous wastes without a permit. CDPHE issued a notice of violation on June 11, 1993, and an Initial Compliance Order in July 1994. CDPHE issued a Final Administrative Compliance Order on June 13, 1996, requiring PEC to comply with hazardous waste laws, implement a cleanup plan for chrome-contaminated soil, conduct frequent inspections, and submit periodic reports.

PEC failed to comply with this order, and CDPHE issued an Administrative Penalty Order on December 23, 1996, assessing civil penalties of $1.13 million. When PEC refused to pay the penalties, CDPHE brought suit in state court to force compliance with both orders. The Colorado state court found on March 23, 1999 that the Final Administrative Compliance Order and the Administrative Penalty Order were enforceable as a matter of law.

Before CDPHE issued its Final Administrative Compliance Order, the EPA

-4-

had requested that CDPHE enforce RCRA's financial assurance requirements against PEC. The EPA notified CDPHE that it would bring its own enforcement action if CDPHE failed to do so. When CDPHE did not demand financial assurances, the EPA filed its own suit against PEC.

The EPA and PEC filed cross-motions for summary judgment. PEC argued that the RCRA statute and res judicata barred the EPA from "overfiling" – which has been defined in this context as "[t]he EPA's process of duplicating enforcement actions." Harmon Indus. v. Browner, 191 F.3d 894, 898 (8th Cir. 1999). The district court granted summary judgment for the EPA and held that PEC must provide $2,119,044 in financial assurances and obtain liability coverage for accidental occurrences. PEC appeals the district court's grant of summary judgment.

## II. Discussion

We review the grant of summary judgment de novo, applying the same standard as the district court. Wark v. United States, 269 F.3d 1185, 1187 (10th Cir. 2001). Summary judgment is appropriate when there is no genuine issue of material fact, viewing the evidence in the light most favorable to the nonmoving party. Id.

A. Permissibility of Overfiling

PEC contends that the district court erred in not following the Eighth

Circuit's interpretation of RCRA in Harmon. Under RCRA, a state may apply to the EPA for authorization to administer and enforce its own hazardous waste program if its program is equivalent to the federal program and provides adequate enforcement. 42 U.S.C. § 6926(b), (c). The Harmon court held that RCRA allows the EPA to overfile after providing notice to the authorized state only if the EPA withdraws authorization or if the state fails to initiate an enforcement action. 191 F.3d at 899. We review the district court's construction of a statute de novo. Foutz v. United States, 72 F.3d 802, 804 (10th Cir. 1995).

A state program authorized pursuant to RCRA operates "in lieu of" the federal program. 42 U.S.C. § 6926(b). PEC contends that the "in lieu of" language renders the EPA powerless to file a separate lawsuit when a state has been authorized to run its own program and initiates its own enforcement action. The EPA disagrees and interprets RCRA in its regulations to allow such overfiling. 40 C.F.R. §§ 271.16(c) note, 271.19; see also United States v. Power Eng'g Co., 125 F. Supp. 2d 1050, 1061 (D. Colo. 2000) (discussing the history and context of these regulations).

Because the EPA is charged with the administration of RCRA, Chevron v. NRDC guides our review of its interpretation of the statute. 467 U.S. 837 (1984). Our first question is "whether Congress has directly spoken to the precise question at issue." Id. at 842. "If the intent of Congress is clear, that is the end

of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. If the statute is "silent or ambiguous," however, we defer to the agency's interpretation "if it is based on a permissible construction of the statute." Id. at 843. More specifically, if there is "an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," we must accept the agency's interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute." Id. at 843-44. Alternatively, if there is only an implicit delegation of authority to the agency, we must accept a "reasonable interpretation made by the administrator of [the] agency." Id. at 844. After reviewing the statute, we conclude that it is ambiguous, and we defer to the agency interpretation.

The EPA argues that Congressional intent to allow overfiling is demonstrated by 42 U.S.C. § 6928(a), which conditions EPA enforcement only on providing notice to an authorized state: "[T]he [EPA] Administrator may issue an order assessing a civil penalty for any past or current violation . . . . [T]he Administrator shall give notice to the State in which such violation has occurred prior to issuing an order or commencing a civil action under this section." As another circuit court held, "Read in context, section [6928(a)] . . . simply conditions the exercise of [federal] authority on the provision of prior notice." Wyckoff Co. v. EPA, 796 F.2d 1197, 1201 (9th Cir. 1986).

The EPA finds support for this interpretation in RCRA's citizen suit provision, which explicitly limits authority for citizen suits. This provision states, "No [citizen suit] may be commenced . . . if the [EPA] or State has commenced and is diligently prosecuting a civil or criminal action . . . ." 42 U.S.C. § 6972(b)(1). No similar language is included in section 6928, which only requires notice. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Brown v. Gardner, 513 U.S. 115, 120 (1994). Because Congress explicitly prohibits citizens from duplicating a federal or state RCRA action in section 6972(b)(1), but omits such language from section 6928, the statute suggests that Congress intended to prohibit duplicative citizen suits but not duplicative federal suits.

PEC argues, however, that several provisions of RCRA support its interpretation that RCRA unambiguously prohibits overfiling. PEC relies largely on section 6926(b), which provides that, once a state's hazardous waste program has been approved under RCRA, "[s]uch State is authorized to carry out such program in lieu of the Federal program under this subchapter in such State and to issue and enforce permits . . . ." 42 U.S.C. § 6926(b). PEC argues that, because an authorized state program operates "in lieu of" the federal program, the EPA

-8-

may not file an enforcement action after a state has done so.  The linchpin of PEC's argument "'is that the term 'program' in § 6926 incorporates the exclusive responsibility to enforce criminal provisions penalizing the disposal of hazardous wastes.'"  United States v. Elias, 269 F.3d 1003, 1009 (9th Cir. 2001) (quoting United States v. MacDonald & Watson Waste Oil Co., 933 F.2d 35, 44 (1st Cir. 1991)).  The statute, however, does not define the term "program," and the meaning of the term is ambiguous.  Wyckoff Co. v. EPA, 796 F.2d 1197, 1200 (9th Cir. 1986).  The EPA argues that "program" refers only to the administration of the regulatory program, and not to enforcement.  It argues that section 6926(b) simply provides that once authorization has taken place, state requirements replace federal requirements, because the state requirements may be more stringent.  Cf.  40 C.F.R. § 271.1(i) (allowing states to adopt more stringent and extensive requirements than the federal requirements).

The wording of section 6926(b) lends support to the EPA's interpretation. Power Eng'g, 125 F. Supp. 2d at 1059.  The administration of authorized state programs and the enforcement of state regulations are addressed in separate clauses of the relevant sentence: "[An authorized] State is authorized to carry out [its] program in lieu of the Federal program under this subchapter in such State and to issue and enforce permits for the storage, treatment, or disposal of hazardous waste . . . ."  42 U.S.C. § 6926(b) (emphasis added).  Because "in lieu

of" appears in the first clause rather than the second, the language can reasonably be interpreted as saying that the state is authorized to carry out its program in lieu of the federal program, and that the state is authorized to issue and enforce permits. Power Eng'g, 125 F. Supp. 2d at 1059. If enforcement were considered part of carrying out a program, the second clause would be superfluous, and we cannot "construe a statute in a way that renders 'words or phrases meaningless, redundant, or superfluous.'" Id. at 1059 (quoting Proctor & Gamble Co. v. Haugen, 222 F.3d 1262, 1272 (10th Cir. 2000)).

The only other circuit court of which we are aware that has directly addressed the question acknowledged that "the EPA is correct that the 'in lieu of' language refers to the program itself." Harmon, 191 F.3d at 899. The Harmon court nonetheless found that "the administration and enforcement of the program are inexorably intertwined." Id. at 899. This interpretation fails to account for the placement of "enforcement" and "in lieu of" in separate clauses of section 6926(b), and it does not adequately consider the structure of the statute. Section 6926 addresses the administration and enforcement of state regulations by authorized states, while the federal enforcement of such regulations is addressed in a different part of the statute – section 6928. Given this statutory structure, the EPA's conclusion that administration and enforcement of RCRA are not inexorably intertwined – and that authorization of a state program therefore does

not deprive the EPA of its enforcement powers – is not unreasonable.  See also

Power Eng'g, 125 F. Supp. 2d at 1059.

Even if we were to find that administration and enforcement were

inexorably intertwined, we could only reach the Harmon court's ultimate holding

by "harmonizing" different sections of the statute:

> Harmonizing the section 6928(a)(1) and (2) language that allows the EPA to bring an enforcement action in certain circumstances with section 6926(b)'s [sic[1]] provision that the EPA has the right to withdraw state authorization if the state's enforcement is inadequate manifests a congressional intent to give the EPA a secondary enforcement right in those cases where a state has been authorized to act that is triggered only after state authorization is rescinded or if the state fails to initiate an enforcement action.

191 F.3d at 899.  This interpretation goes well beyond the plain language of the

statute.  While Harmon correctly states that section 6928(a) limits the EPA's right

to bring an enforcement action to "certain circumstances," the only explicit

limitation is that the EPA must provide prior notice to authorized states.  42

U.S.C. § 6928(a)(2).  Withdrawal of authorization for a state program is an

"extreme" and "drastic" step that requires the EPA to establish a federal program

to replace the cancelled state program.  Waste Mgmt., Inc. v. EPA, 714 F. Supp.

340, 341 (N.D. Ill. 1989).  Nothing in the text of the statute suggests that such a

---

[1] Section 6926(e), rather than section 6926(b), allows for withdrawal of authorization.  Section 6926(b) states when the EPA may deny a state's application for authorization.

step is a prerequisite to EPA enforcement or that it is the only remedy for inadequate enforcement.

PEC also relies upon section 6926(d) in support of its position that the statute does not allow overfiling. That section provides:

> (d) Effect of a State permit
> Any action taken by a State under a hazardous waste program authorized under this section shall have the same force and effect as action taken by the [EPA] under this subchapter.

42 U.S.C. § 6926(d). The Harmon court, construing "the Act as a whole," found that this section applies broadly to any action authorized under this subchapter, including enforcement:

> The state authorization provision substitutes state action (not excluding enforcement action) for federal action. It would be incongruous to conclude that the RCRA authorizes states to implement and administer a hazardous waste program "in lieu of" the federal program where only the issuance of permits is accorded the same force and effect as an action taken by the federal government. . . . Nothing in the statute suggests that the "same force and effect" language is limited to the issuance of permits but not their enforcement.

191 F.3d at 900. According to this interpretation, the statute substitutes state enforcement action for EPA enforcement action and therefore does not permit an EPA lawsuit when a state has initiated an enforcement suit. This interpretation reads too much into the provision. The provision must be read in the context of the language and design of the statute as a whole. United States v. Thompson, 287 F.3d 1244, 1249 (10th Cir. 2002). Section 6926 addresses the authorization

of state programs, not federal enforcement. The heading of subsection 6926(d) also suggests that the provision is more limited. While the title of a statutory subsection "is not part of the law itself, . . . it can be used to interpret an ambiguous statute." United States v. Glover, 52 F.3d 283, 286 (10th Cir. 1995). Again, it is ambiguous whether "program" includes enforcement. Wyckoff, 796 F.2d at 1200. The statutory heading, "Effect of a State permit," suggests that this subsection only intends for state permits to have the "same force and effect" as federal permits.

In our judgment, limiting the "same force and effect" language to the issuance of permits is not "incongruous" with RCRA as a whole. Harmon, 191 F.3d at 900. It would be reasonable to conclude that Congress simply intended for section 6926(d) to clarify that recipients of state-issued permits need not obtain a permit from the EPA. Power Eng'g, 125 F. Supp. 2d at 1060; see also 42 U.S.C. § 6925(a) ("[T]he Administrator shall promulgate regulations requiring each person owning or operating an existing facility or planning to construct a new facility for the treatment, storage, or disposal of hazardous waste identified or listed under this subchapter to have a permit issued pursuant to this section."). Thus, it is reasonable to conclude that while subsection 6926(d) prevents the EPA from denying the effect of a state permit, it does not prevent the EPA from taking action when a violation occurs.

-13-

PEC also argues that the language of the citizen suit provision supports its interpretation. That provision states that no citizen suit may be brought if "the [EPA] Administrator <u>or</u> State" is diligently pursuing a lawsuit. 42 U.S.C. § 6972(b)(1) (emphasis added). PEC contends that the choice of the word "or" instead of "and/or" indicates that Congress did not contemplate competing actions between the EPA and an authorized state. <u>Harmon</u>, 191 F.3d at 901. This distinction is ambiguous at most. The word "and" is unnecessary in this context, because the statute clearly states that a lawsuit by either entity is sufficient to bar a citizen suit. Even without the word "and," the statute clearly prohibits citizen suits when both the EPA and a state are diligently pursuing an action.

In sum, PEC's position is arguably supported by the "in lieu of" and "same force and effect" language of section 6926, as well as the "or" instead of "and/or" language of section 6972(b)(1). On the other hand, PEC's interpretation contradicts the plain language of section 6928, the wording of section 6926(b), and the structure of the statute. Moreover, PEC's result is only reached by "harmonizing" sections 6928 and 6926 in a rather strained manner. Given these ambiguities and contradictions, we find that Congress has not "directly spoken to the precise question at issue." <u>Chevron</u>, 467 U.S. at 842. Because RCRA is ambiguous regarding whether EPA overfiling is permissible, we must defer to the EPA's reasonable interpretation "even if we would have reached a different result

-14-

had we construed the statute initially." Wash. Dep't of Ecology v. EPA, 752 F.2d 1465, 1469 (9th Cir. 1985); see Chevron, 467 U.S. at 843 n.11. We find that the EPA's interpretation of RCRA has substantial support in the text of the statute and is therefore a reasonable interpretation of the statute.

B.      Res Judicata

PEC next argues that the EPA's lawsuit is barred by the doctrine of res judicata. The question of application of res judicata to the facts, viewed in the light most favorable to the nonmoving party, is a pure question of law to be reviewed de novo. Plotner v. AT & T Corp., 224 F.3d 1161, 1168 (10th Cir. 2000).

"Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153 (1979). The Colorado lawsuit ended in a final judgment on the merits for CDPHE based on a cause of action under RCRA. It is disputed, however, whether the EPA was in privity with CDPHE and whether the EPA, which sought only financial assurances, brought the same cause of action as the CDPHE.

Privity requires "at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same." Lowell Staats Min. Co. v. Philadelphia Elec.

Co., 878 F.2d 1271, 1275 (10th Cir. 1989). In general, "state and federal governments are separate parties for res judicata purposes, so that litigation by one does not bind another." 18 Charles Alan Wright, et al., Federal Practice and Procedure, § 4458, at 503. The Supreme Court has stated that "to bind the United States when it is not formally a party, it must have a laboring oar in a controversy." Drummond v. United States, 324 U.S. 316, 318 (1945). The United States has such a "laboring oar" when it "assume[s] control over litigation." Montana, 440 U.S. at 154. In Montana, such control was demonstrated by the fact that the United States had:

(1) required the [] lawsuit to be filed;
(2) reviewed and approved the complaint;
(3) paid the attorneys' fees and costs;
(4) directed the appeal from State District Court to the Montana Supreme Court;
(5) appeared and submitted a brief as amicus in the Montana Supreme Court;
(6) directed the filing of a notice of appeal to this Court; and
(7) effectuated [the] abandonment of that appeal on advice of the Solicitor General.

Id. at 155. Here, none of these factors is present, and there is no evidence that the EPA directly "assumed control over the litigation."

PEC argues, however, that the EPA "pulled" the "laboring oar" earlier in the process, when it ceded authority to the state to operate programs "in lieu of" and "with the same force and effect" as the EPA. Harmon, 191 F.3d at 904. In support of its position, PEC relies on Harmon and United States v. ITT Rayonier,

-16-

627 F.2d 996, 1002-03 (9th Cir. 1980), both of which found privity where a state program operated "in lieu of" a federal program.

Even if we agreed that the "laboring oar" could be "pulled" by such a delegation of authority, Harmon and Rayonier are distinguishable from the present case, and we find no other authority that would allow us to find privity based on the tenuous connection presented here. Unlike the Eighth Circuit in Harmon, we have found that states act in lieu of the EPA only with respect to administration of the program and issuance of permits. The EPA's connection to the state's litigation is therefore more limited than in Harmon. In Rayonier, the court did not follow the laboring oar analysis. Instead, the court relied largely on the identical interests of the state agency and the EPA. 627 F.2d at 1003. The state agency maintained the same position as the EPA in the state proceedings, and the agency asserted that position "vigorously." Id. at 1003. Unlike the state agency in Rayonier, the CDPHE did not maintain the same position as the EPA, as it did not seek financial assurances as the EPA had requested. We therefore decline to extend the doctrine of privity to cover the situation in this case. The delegation of authority to the state agency was limited, and the two agencies had different interests. Because there is no privity, res judicata does not apply, and we need not consider whether the cause of action was the same in both cases.

-17-

### III. Conclusion

We find that the RCRA statute is ambiguous, and we defer to the EPA's reasonable interpretation that RCRA allows EPA overfiling. We also find that the EPA and CDPHE were not in privity, making the res judicata doctrine inapplicable. We therefore AFFIRM the ruling of the district court.